**GUTRIDE SAFIER LLP**
SETH A. SAFIER (State Bar No. 197427)
seth@gutridesafier.com
MARIE A. MCCRARY (State Bar No. 262670)
marie@gutridesafier.com
HAYLEY REYNOLDS (State Bar No. 306427)
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 639-9090
Facsimile: (415) 449-6469

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT FOR THE

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MOLLY BROWN, as an individual, on behalf of herself, the general public and those similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>VAN'S INTERNATIONAL FOODS, INC.,<br><br>Defendant. | CASE NO. 3:22-CV-00001-WHO<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**<br><br>Hon. William Orrick<br><br>Hearing Date: May 4, 2022<br>Hearing Time: 2 p.m. PT<br>Courtroom: Courtroom 2 (17th Floor) |

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................... 1

II.     BACKGROUND ..................................................................................................... 3

    A.      Protein Quality Generally ........................................................................... 3

    B.      The Regulatory Framework ......................................................................... 4

    C.      Sarah Lee's Labels ....................................................................................... 6

III.    LEGAL STANDARD ............................................................................................. 7

IV.     ARGUMENT .......................................................................................................... 7

    A.      Plaintiff's Unlawful Prong Claims Withstand Dismissal............................ 7

        1.      Plaintiff adequately pleaded her unlawful prong claims, including

            statutory and Article III standing ..................................................... 7

        2.      Plaintiff's unlawful prong claims are not expressly preempted ................. 10

        3.      *Buckman* preemption does not apply ........................................................ 10

    B.      Plaintiff's CLRA and Fraud Claims are Also Viable. ............................... 13

        1.      Plaintiff's fraud and CLRA claims are not preempted. ........................... 13

            i.      FDA recognizes that information stated inside the NFP can

                be "false or misleading" when stated elsewhere .......................... 15

            ii.     FDA deems Sarah Lee's front label claims to be misleading. ....... 17

            iii.    *Chong* and *Nacarino* do not change the result. ............................. 18

            iv.     This case presents exceptional circumstances akin to *Reid*

                and *Hawkins*. ................................................................................ 20

            v.      The FDA webpage is irrelevant. ................................................... 22

    C.      Sarah Lee's Remaining Arguments Are Without Merit............................ 23

        1.      Plaintiff has pleaded her fraud claim with the required particularity......... 23

        2.      Plaintiff is entitled to plead remedies in the alternative to her

            monetary relief claims. ................................................................... 24

        3.      Plaintiff has standing to seek injunctive relief based on potential

            future harm. .................................................................................... 24

1

V.      CONCLUSION ........................................................................................................ 25

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF AUTHORITIES**

*Cases*

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ....................................................................................7

*Bell Atlantic. Corp. v. Twombly*, 550 U.S. 544 (2007) .............................................................4, 7

*Bruton v. Gerber Prods. Co.*, 2017 U.S. App. LEXIS 12833 (9th Cir. July 17, 2017) ..................8

*Buckman v. Plaintiffs' Legal Committee*, 531 U.S. 341 (2001) ...................................................10

*Chong v. KIND LLC*, --- F. Supp. 3d ---, 2022 U.S. Dist. LEXIS 27438 (N.D. Cal. Feb. 15, 2022)
   ...............................................................................................................................2, 12

*Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956 (9th Cir. 2018)..............................................24

*Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152 (9th Cir. 2012)............................................21

*Friends of the Santa Clara River v. United States Army Corps of Eng'rs*, 887 F.3d 906 (9th Cir.
   2018) .................................................................................................................................19

*Gubala v. CVS Pharmacy, Inc.*, 2016 U.S. Dist. LEXIS 32759 (N.D. Ill. Mar. 15, 2016)..............2

*Hawkins v. Kroger Co.*, 906 F.3d 763 (9th Cir. 2018)...........................................................6, 13

*Hinojos v. Kohl's Corp.*, 718 F.3d 1098 (9th Cir. 2013) ..........................................................10

*In re Trader Joe's Tuna Litigation*, 2017 WL 2408117 (C.D. Cal. June 2, 2017)......................11

*Jones v. ConAgra Foods, Inc.*, 912 F. Supp. 2d 889 (N.D. Cal. 2012)......................................15

*JUUL*, 2020 U.S. Dist. LEXIS 197766 (N.D. Cal. Oct. 23, 2020)..............................................24

*Kane v. Chobani, Inc.*, 2013 U.S. Dist LEXIS 134385 (N.D. Cal. Sept. 19, 2013) .......................8

*Kisor v. Wilkie*, 139 S. Ct. 2400 (2019) ................................................................................23

*Klein v. Chevron U.S.A., Inc.*, 137 Cal. Rptr. 3d 293 (Cal. Ct. App. 2012)..................................7

*Krommenhock v. Post Foods, LLC*, 255 F. Supp. 3d 938 (N.D. Cal. 2017) ...............................10

*Kwikset Corp. v. Superior Court*, 246 P.3d 877 (Cal. 2011).....................................................9

*Lily v. ConAgra Foods, Inc.*, 743 F. 3d 662 (9th Cir. 2014) ....................................................13

*Loomis v. Slendertone Distribution, Inc.*, 420 F. Supp. 3d 1046 (S.D. Cal. 2019) .....................12

*Madani v. Volkswagen Grp. of Am., Inc.*, 2019 U.S. Dist. LEXIS 133926 (N.D. Cal. Aug. 8,
   2019) .................................................................................................................................23

*Maya v. Centex Corp.*, 658 F.3d 1060 (9th Cir. 2011) ............................................................10

*McCellan v. I-Flow Corp.*, 776 F.3d 1035 (9th Cir. 2015) ........................................................11

*Medtronic, Inc. v. Lohr,* 518 U.S. 470 (1996) .............................................................................13

*Mont. Air Chapter No. 29, Ass'n of Civilian Technicians, Inc. v. Fed. Labor Relations Auth.*, 898
      F.2d 753 (9th Cir. 1990) ......................................................................................................19

*Morgan v. Wallaby Yogurt Co.*, 2013 U.S. Dist. LEXIS 144959 (N.D. Cal. Oct. 4, 2013).......7, 10

*Nacarino v. Chobani, LLC*, 2022 U.S. Dist. LEXIS 20671 (N.D. Cal. Feb. 4, 2022)....................9

*Nacarino v. Kashi Co.*, --- F. Supp. 3d ---, 2022 U.S. Dist. LEXIS 23409 (N.D. Cal. Feb. 9, 2022)
      ...............................................................................................................................................2

*Plumley v. Massachusetts,* 155 U.S. 461 (1894) .........................................................................13

*Porter v. NBTY, Inc.* (*Porter I*), 2016 U.S. Dist. LEXIS 163352 (N.D. Ill. Nov. 28, 2016)......2, 15

*Porter v. NBTY, Inc. (Porter II)*, No. 15 CV 11459, 2019 U.S. Dist. LEXIS 190495 (N.D. Ill.
      Nov. 4, 2019)...................................................................................................................5, 13

*Reid v. Johnson & Johnson*, 780 F.3d 952 (9th Cir. 2015). ....................................................6, 16

*Stengel v. Medtronic Inc.,* 704 F.3d 1224 (9th Cir. 2013)...........................................................13

*Swearingen v. Amazon Pres. Partners, Inc.*, 2014 U.S. Dist. LEXIS 36830 (N.D. Cal. Mar. 18,
      2014) ......................................................................................................................................8

*Theranos, Inc. v. Fuisz Pharma LLC*, 876 F. Supp. 2d 1123 (N.D. Cal. 2012) ............................7

*Transunion LLC v. Ramirez,* 141 S. Ct. 2190 (2021) ...................................................................9

*Ulrich v. Probalance, Inc.*, 2017 U.S. Dist. LEXIS 132202 (N.D. Ill. Aug. 18, 2017).................2

*Vassigh v. Bai Brands LLC*, 2015 U.S. Dist. LEXIS 90675 (N.D. Cal. 2015) ...........................12

*Vizcarra v. Unilever U.S., Inc.*, 2020 U.S. Dist. LEXIS 125649 (N.D. Cal. July 16, 2020) .........25

*Wyeth v. Levine,* 555 U.S. 555 (2009)........................................................................................11

*Zeiger v. WellPet LLC*, 304 F. Supp. 3d 837 (N.D. Cal. 2018)....................................................8

**Regulations**

21 C.F.R. § 101.13(c)................................................................................................................16

21 C.F.R. § 101.13(i)(3)........................................................................................................2, 16

21 C.F.R. § 101.9(c)(7)(i) & (iii) ...............................................................................................1

21 C.F.R. § 101.9(c)(7)(i)–(ii) .........................................................................................3, 4, 5

21 U.S.C. § 343-1(a)(5) ................................................................................................. 12, 13, 15

21 U.S.C. § 343-1(c)(1) ............................................................................................................. 13

38 Fed. Reg. 2125 ................................................................................................................. 7, 19

56 Fed. Reg. 60366 ............................................................................................................... 4, 20

56 Fed. Reg. 60421 .................................................................................................................... 21

58 Fed. Reg. 2079 ................................................................................................................ passim

## I.    INTRODUCTION

Defendant Van's International Foods, Inc. ("Sarah Lee") makes protein a cornerstone of its business and touts protein content on the front of its products' labels. For example, Sarah Lee prominently advertises "10g PLANT-BASED protein" on the front of its Power Grains Protein Original Waffles. These front label protein claims, however, are unlawful. FDA regulations *prohibit* manufacturers from making *any* protein claims on a product unless the manufacturer has: (1) calculated the "corrected amount of protein per serving" based on the quality of the product's protein using the Protein Digestibility Corrected Amino Acid Score ("PDCAAS"); and (2) provided a statement of that corrected amount of protein expressed as percent daily value ("%DV") in the nutrition facts panel ("NFP"). 21 C.F.R. § 101.9(c)(7)(i) & (iii). Sarah Lee did none of this. Accordingly, its front label protein claims violate parallel federal and state laws and are actionable under the unlawful prong of the UCL.

The FDA imposes tight restrictions on protein labelling because it recognizes that not all proteins provide the same nutritional value. Low quality proteins are not fully digestible and are deficient in certain amino acids essential to human protein synthesis. When the human body uses up the least prevalent essential amino acid in a protein source, protein synthesis stops, and the remainder of that protein source degrades into waste. The PDCAAS score expresses this as a discount factor that represents the actual amount of protein the product will provide nutritionally. For example, Sarah Lee's products consist of wheat and oat based proteins, which have PDCAAS scores of between 0.4 and 0.5. This means that, despite prominently advertising 10 grams of protein per serving, the product will deliver *less than half* that amount of useable protein, i.e., only 4 to 5 grams. As a result, The FDA has expressly recognized in published guidance that, "protein quantity alone *can be misleading* on foods that are of *low protein quality.*" 58 Fed. Reg. 2079 at 2101-2 (emphasis added). It also stated that it *requires* manufacturers to determine a product's PDCAAS score and to provide a statement of the corrected amount of protein in order to make a protein claim precisely to ensure that consumers could "readily identify foods with particularly low quality protein to *prevent them from being misled by information on only the amount of protein present.*" *Id.* at 2102 (emphasis added).

1    In addition to being unlawful, Sarah Lee's front label protein claims are separately
2    actionable under the fraud prong of the UCL and also the CLRA for being misleading. These state
3    laws parallel separate FDA regulations that prohibit manufacturers from making "a statement
4    about the amount or percentage of a nutrient" on a product's front label if that statement is "false
5    or misleading in any respect." 21 C.F.R. § 101.13(i)(3). Advertising 10 grams of protein on a
6    product that provides to a consumer less than 5 grams of useable protein is misleading. Because
7    this state law deceptive advertising claim directly parallels federal regulations, it is not expressly
8    preempted. Numerous courts to address this specific issue have so held. *E.g., Porter v. NBTY, Inc.*
9    (*Porter I*), 2016 U.S. Dist. LEXIS 163352, at *17–18 (N.D. Ill. Nov. 28, 2016); *Ulrich v.*
10   *Probalance, Inc.*, 2017 U.S. Dist. LEXIS 132202, at *11–12 (N.D. Ill. Aug. 18, 2017); *Gubala v.*
11   *CVS Pharmacy, Inc.*, 2016 U.S. Dist. LEXIS 32759, at *40 (N.D. Ill. Mar. 15, 2016).

12   It is true that two recent decisions—*Nacarino v. Kashi Co.*, --- F. Supp. 3d ---, 2022 U.S.
13   Dist. LEXIS 23409 (N.D. Cal. Feb. 9, 2022) and *Chong v. KIND LLC*, --- F. Supp. 3d ---, 2022
14   U.S. Dist. LEXIS 27438 (N.D. Cal. Feb. 15, 2022)—ruled in favor of preemption. *Nacarino* is
15   distinguishable because the products at issue there all included a statement of the corrected
16   amount of protein in the NFP, which means there was no claim that the front label unlawfully
17   made a protein claim. As to the deception claim, *Nacarino agreed* with Plaintiff's fundamental
18   theory that standalone protein quantity claims on low quality protein products can be misleading
19   "in the colloquial sense." The Court nevertheless held the claims preempted because it believed
20   that a testing methodology the FDA has approved to calculate protein in the NFP could never be
21   misleading "in the regulatory sense" even when stated alone on the front of the package. But
22   *Nacarino* ignored that FDA has definitively stated that standalone protein quantity claims on low-
23   quality foods can be misleading. *Chong* simply adopted *Nacarino*'s holding on express
24   preemption without much analysis. It then also held an unlawfulness claim was impliedly
25   preempted, a position that this Court and others in this District routinely reject. As explained
26   further below, both decisions conflict with the FDA's official position, miss key regulations, and
27   fail to acknowledge the regulations prohibit more than "uncontrovertibly false" claims. Both
28   decisions are currently up for appeal.

Preemption does not apply here because both state and federal law prohibit any front label protein claims when the product fails to meet FDA's requirements for making such a claim. State and federal law also agree that products may not make misleading claims about nutrient amounts like protein. Because Plaintiff plausibly alleges that Sarah Lee's front label protein claims are misleading, Plaintiff's claims are not preempted. The motion should be denied in its entirety.

## II.    BACKGROUND

### A.    Protein Quality Generally

Consumers' desire for high protein products, and, correspondingly, the number of products making protein claims has exploded recently. ECF 1, ¶ 2, 20. But proteins are not a monolithic substance. They are chains of amino acids that come in many different varieties, some of which humans can use more fully and readily than others. *Id.* ¶ 24; *see also* 21 C.F.R. § 101.9(c)(7)(i)–(ii). Of the 20 total amino acids, humans cannot produce nine of them on their own; those amino acids, known as essential amino acids, must be obtained through the diet. *Id.* at ¶ 25. "[P]rotein quality is a measure of the content, proportion, and availability of essential amino acids in food protein." 56 Fed. Reg. 60366, § B.

A protein's quality is critical from a nutritional perspective because the human body requires nine essential amino acids to synthesize the human proteins necessary for life. ECF 1 at ¶ 26. Lacking even one essential amino acid will prevent protein synthesis from occurring, and the remainder of the amino acids from that protein source simply degrade into waste. *Id.* Accordingly, once the body uses up the limiting essential amino acid from a protein source, the remainder of that protein becomes useless to human protein synthesis and of little nutritional value in general. *Id.* A protein source's quality, and its usefulness in human nutrition, also depends upon how digestible it is. *Id.* at ¶ 27. Whatever portion of a protein is non-digestible will simply pass through the body without being absorbed or used at all. *Id*

As the FDA recognizes, "[a]ccurate methods for determining protein quality are necessary because different food protein sources are not equivalent in their ability to support growth and body protein maintenance." 56 Fed. Reg. 60366, § B. PDCAAS is the FDA mandated measure of protein quality and it accounts for both the proportion of essential amino acids in the protein

1    source and its digestibility. PDCAAS combines these two facets into a discount factor (e.g., 0.5)

2    that, when multiplied by protein quantity in grams, shows how much protein a product actually

3    provides for human nutritional purposes, also in grams. *Id.* at ¶ 29. FDA regulations refer to this

4    as the "corrected amount of protein per serving." *See* 21 C.F.R. § 101.9(c)(7)(i)–(ii).[1]

5    **B.    The Regulatory Framework**

6          FDA regulates what manufacturers may say about protein. In so doing, the regulations

7    recognize the critical distinction between protein quality and quantity and contain specific

8    provisions relating to both with respect to statements in a product's Nutrition Facts Panel (NFP).

9          All NFPs must state the quantity of grams of protein per serving. 21 C.F.R. § 101.9(c)(7).

10   Manufacturers "may" use nitrogen testing to calculate that quantity, although they may also use

11   other methods. 21 C.F.R. § 101.9(c)(7). The nitrogen method estimates protein quantity by

12   multiplying the nitrogen content of a food by a standardized conversion factor; it does not account

13   in any way for the quality of a protein source.

14         Statements about protein elsewhere on the packaging are purely voluntary. *See* 21 C.F.R.

15   § 101.9(c)(7)(i)–(ii). More importantly, the FDA permits these voluntary protein claims *only if*

16   the manufacturer satisfies certain requirements. Section 101.9(c)(7)(i) provides that if a product

17   makes a "protein claim" the manufacturer "*shall*" (1) calculate the "corrected amount of protein

18   per serving" using the PDCAAS method, and (2) provide a "statement of the corrected amount of

19   protein" inside the NFP immediately adjacent to the protein quantity figure and "expressed as" a

20   %DV. The purpose of this is to inform consumers about the amount of protein in the product the

21   _____

22   [1] Sarah Lee repeatedly discusses how PDCAAS understates the value of proteins "consumed as
     part of a mixed diet." *See, e.g.*, ECF 20 at 4. This is outside the pleadings and the Court should

23   ignore it. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Regardless, the entire
     discussion is irrelevant because Sarah Lee does not tell consumers that its products provide "10g

24   protein" only when consumed as part of a mixed diet. Rather, its claims lead reasonable
     consumers to believe the products provide that amount of protein on their own. Moreover, Sarah

25   Lee ignores the complexity of what is at best a fact issue. An incomplete protein, by its nature,
     lacks certain essential amino acids. In order to effectively "combine" two incomplete proteins

26   into a complete protein, one protein would need to have a surplus of the exact essential amino
     acid that is missing or deficient and the surplus would need to be in the precise amount of the

27   deficiency. Eating multiple incomplete protein sources does not automatically combine into a

28   complete protein. Sarah Lee also ignores the fact that its labels never tell consumers any of this.

human body can actually use. ECF 1 at ¶¶ 4-5, 37. As the FDA explained in published guidance, it implemented this requirement because when a manufacturer voluntarily touts protein to increase its sales, the FDA wanted to ensure consumers could "readily identify foods with particularly low quality protein to ***prevent them from being misled by information on only the amount of protein present***." 58 Fed. Reg. 2079, 2102 (emphasis added).

The economics are also important. Nitrogen testing is less costly than PDCAAS, which is required to state the %DV. FDA determined that there is no need for manufacturers to incur the costs of PDCAAS when they elect not to make protein claims outside the NFP that might mislead consumers about protein levels. *See* 58 Fed. Reg. 2079, at 2102 ("Because protein intakes generally are adequate and not a public health concern for this population group, FDA finds that the additional costs associated with determination of the PDCAAS ... are not warranted ... unless protein claims are made"); *cf. id.* ("nutrition labeling must allow consumers to readily identify foods with particularly low quality protein to prevent them from being misled by information on only the amount of protein present"); *cf. id.* at 2104 (finding "label claims based on [PDCAAS] will more accurately describe the role of the protein product in meeting human nutrition requirements" compared to an alternative method).

As to the front panel, however, "[t]he FDCA and its implementing regulations do not specify every way protein content or source can be calculated or advertised *outside* the nutrition panel. Instead, there is a uniform federal requirement prohibiting false or misleading food labels." *Porter v. NBTY, Inc. (Porter II)*, No. 15 CV 11459, 2019 U.S. Dist. LEXIS 190495, at *8-9 (N.D. Ill. Nov. 4, 2019). More specifically, FDA subjects front label claims to heightened scrutiny through § 101.13(i)(3), which prohibits claims about the "amount or percentage of a nutrient" like protein on the front label if it is "false or misleading in any respect."

FDA made clear that § 101.13(i)(3) applies even if the claim is "permitted or required" inside the NFP. Section 101.13(c), in particular, provides that statements made inside the NFP are not nutrient content claims ***but*** "[i]f such information is declared *elsewhere* on the label or in labeling, it is a nutrient content claim and *is subject to the requirements for nutrient content claims*." So, a claim like "10g Protein" when made inside the NFP is not a nutrient content claim,

Pl's Opp. to Def.'s Mtn. to Dismiss

but § 101.13(c) transforms it into a nutrient content claim and subjects it to all the rules associated with nutrient content claims when it is made on the front. Through § 101.13(c), FDA envisions that some claims that are permissible inside the NFP may be misleading when made outside the context of the NFP. Indeed, the FDA has long explained that nutrient claims in isolation could be "misleading for lack of completeness, and could deceive consumers about the nutritional value of the food . . . and its nutritional weaknesses." 38 Fed. Reg. 2125. And even more pertinent here, the FDA has definitively stated that "***protein quantity alone can be misleading on foods that are of low protein quality.***" 58 Fed. Reg. 2079 at 2101-2 (emphasis added).

As the Ninth Circuit has held, "the rules that govern claims made within the Nutrition Facts Panel and the rules that govern nutrition content claims elsewhere on the label are different." *Hawkins v. Kroger Co.*, 906 F.3d 763, 770 (9th Cir. 2018). In particular, front-label claims—which capture consumers' attention and induce them to purchase products—are subject to heightened scrutiny, including the prohibition on stating an amount of a nutrient (such as protein) if it is misleading "in any respect." *Id.* As a result, the Ninth Circuit has explicitly held that "'*a requirement to state certain facts in the nutrition label is not a license to make that statement elsewhere on the product.*'" *Id.* at 767 (emphasis in original, quoting *Reid v. Johnson & Johnson*, 780 F.3d 952, 960 (9th Cir. 2015).

### C.   Sarah Lee's Labels

Sarah Lee is aware of consumers' increased desire for protein products and therefore touts protein content on the front labels of many of its products. ECF 1 at ¶ 2; Ex. B to ECF 1. Sarah Lee's Power Grains Protein Original Waffles[2] product tells consumers it contains "10G PLANT-BASED protein." *Id.* at ¶¶ 3-4. But nowhere on the packaging—in the NFP or elsewhere—does Sarah Lee include any information on the product's poor protein quality or low PDCAAS score. Sarah Lee's products use wheat and oat protein as the primary protein sources, which typically have PDCAAS scores of between 0.4 and 0.5, which means that the corrected amount of protein per serving is only between 4-5 grams. Accordingly, out of the 10g of protein Sarah Lee

---

[2] All the products are sold under the "Van's" brand name. *See* Ex. B to ECF 1.

advertises to consumers, at least **_half_** is useless to humans. *Id.* at ¶ 19, 30. Sarah Lee's protein

claim is unlawful, and it also misleads consumers.

## III.   LEGAL STANDARD

To survive a motion to dismiss, a plaintiff's complaint need only contain "enough facts to

state a claim [for] relief that is plausible on its face." *Twombly*, 550 U.S. at 570. A claim is

plausible when it "allows the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In evaluating

plausibility, "the court must presume all factual allegations are true and draw all reasonable

inferences in favor of Plaintiff." *Theranos, Inc. v. Fuisz Pharma LLC*, 876 F. Supp. 2d 1123,

1136 (N.D. Cal. 2012) (citing *Twombly*, 550 U.S. at 570; *Iqbal*, 556 U.S. at 678).

## IV.   ARGUMENT

### A.   Plaintiff's Unlawful Prong Claims Withstand Dismissal.

#### 1.   Plaintiff adequately pleaded her unlawful prong claims, including statutory and Article III standing.

Section 17200's "unlawful" prong "borrows violations of other laws and makes those

unlawful practices actionable under the UCL." *Klein v. Chevron U.S.A., Inc.*, 137 Cal. Rptr. 3d

293, 326-27 (Cal. Ct. App. 2012) (internal quotation marks and ellipsis omitted). "Virtually any

law or regulation—federal or state, statutory or common law—can serve as a predicate for a

section 17200 'unlawful' violation." *Id.* (internal quotation marks and ellipsis omitted); *see also*

*Friedman v. AARP, Inc.*, 855 F.3d 1047, 1052 (same). This includes, as here, violations of

California's Sherman Law. *See Morgan v. Wallaby Yogurt Co.*, 2013 U.S. Dist. LEXIS 144959

*28-30 (N.D. Cal. Oct. 4, 2013) (Orrick, J.) (allowing UCL unlawfulness claims based on

predicate violations of the Sherman Law to proceed).

Plaintiff's UCL unlawful prong claim alleges that Sarah Lee violated the Sherman Law

(which adopts the FDA regulations) by making a protein claim on the front label even though it

failed to meet the federally (and state) mandated requirements for making that claim. ECF 1 at ¶¶

5-6, 32-33. Section 101.9(c)(7)(i) is clear: if a product makes a "protein claim" the manufacturer

"**_shall_**" calculate the "corrected amount of protein per serving" using PDCAAS, and provide a

statement to consumers of that corrected amount per serving expressed as a %DV for protein in the NFP. The converse is necessarily true—without having calculated the PDCASS and provided a statement of the corrected amount of protein expressed as a %DV, a manufacturer **shall not** make **any** protein claim. Because Sarah Lee's products failed all of these requirements, it was not permitted to make any protein claim at all, and the front label was **always** unlawful per se.

Moreover, Plaintiff has adequately alleged standing. To have standing to sue, the Plaintiff must allege that she lost money or property "as a result of" the alleged unlawful conduct. Where, as here, the unlawful conduct is mislabeling, the Plaintiff must allege she actually read and relied on the unlawful labeling claim when purchasing the product. *Swearingen v. Amazon Pres. Partners, Inc.*, 2014 U.S. Dist. LEXIS 36830, at *7 (N.D. Cal. Mar. 18, 2014). This is not because the unlawfulness claim requires substantive proof of deception—it does not—but because otherwise "purchasers who never 'viewed the defendant's advertising' . . . would have standing to sue [which] is inconsistent with Proposition 64." *Id.* (quoting *Kane v. Chobani, Inc.*, 2013 U.S. Dist LEXIS 134385 *33-34 (N.D. Cal. Sept. 19, 2013)).[3] Here, the unlawful labeling claim is the front label protein claim. Plaintiff alleges that she bought the products "after reading and relying on Defendant's product front label that promised the Products provided a specific number of grams of protein per serving" and while believing "that the product would actually provide her the specific amount of protein on the front label in a form her body could use as protein." ECF 1 at ¶ 53. Thus, the Complaint alleges that Plaintiff relied on the exact claim that the regulations prohibited from being on the products to begin with due to Sarah Lee's failure to comply with § 101.9(c)(7)(i). Moreover, Plaintiff paid a price premium for the products because they included an unlawful label claim. *See* ECF 1 at ¶¶ 52-55, 75. Accordingly, Plaintiff has both Article III and UCL standing to challenge that unlawful behavior. *See Zeiger v. WellPet LLC*, 304

---

[3] The Ninth Circuit has made clear that where the "predicate violation [] is of the Sherman Law," there is "no requirement that the public be likely to experience deception" when, as here, the underlying FDA regulations include no such requirement. *Bruton v. Gerber Prods. Co.*, 2017 U.S. App. LEXIS 12833, at *6 (9th Cir. July 17, 2017) (unpublished); *see also Swearingen*, 2014 U.S. Dist LEXIS 36830 at *7 ("the reasonable consumer test does not apply to the Plaintiff's claims under the unlawful prong of the UCL predicated on Sherman Law violations").

F. Supp. 3d 837, 846 (N.D. Cal. 2018) (Orrick, J.) (constitutional and economic standing are present where plaintiff alleges she would not have purchased product without mislabeling)

Sarah Lee attempts to pigeonhole Plaintiff's claim into one purely about the absence of the %DV. Using that mischaracterization, Sarah Lee argues that Plaintiff needs to plead reliance on the absence of the %DV, rather than the front label protein claim. *See* ECF 20 at 16-17. That analysis is wrong. The law is clear, "plaintiffs are required to plead and prove that they actually relied *on the statement at issue*." *Nacarino v. Chobani, LLC*, 2022 U.S. Dist. LEXIS 20671, at *19 (N.D. Cal. Feb. 4, 2022) (emphasis added). Here, the statement at issue is the front label protein claim. Lacking a %DV is not by itself unlawful. Indeed the default rule is that manufacturers do not have to perform PDCAAS, calculate the corrected amount of protein per serving, and state that corrected amount in the form of a %DV for protein. Only lacking a %DV in *the presence* of a protein claim is unlawful, as § 101.9(c)(7)(i) makes clear. This case challenges the presence of that unlawful protein claim, not the simple absence of the %DV. In other words, the labeling statement at issue in this case is the front label protein claim; the failure to provide a statement of the corrected amount of protein per serving calculated based on PDCAAS and expressed as a %DV are the *reasons that front label claim is unlawful*. Sara Lee unlawfully made a protein claim on the front of its packages to induce consumers to purchase the product at a premium price, which Plaintiff did. *See* ECF 1 at ¶¶ 52-55, 75. That is the injury producing conduct. Plaintiff is entitled and has standing to sue to seek restitution of the premium she paid as a result of Sara Lee's unlawful label, which is exactly what she is doing.[4]

Sarah Lee also analogizes this case to the Supreme Court's recent decision in *Transunion LLC v. Ramirez*, 141 S. Ct. 2190, 2204 (2021) to argue that Plaintiff failed to allege an injury-in-fact sufficient for standing. *See* ECF 20 at 17. But, unlike *Transunion*, Plaintiff paid a specific amount of money that she would not have paid, or at least paid less, if Sarah Lee had complied

---

[4] Sarah Lee cannot feign lack of notice that this was the basis of Plaintiff's claims. Her complaint made clear that "*The protein claims on the front of the package*, such as '10g PLANT-BASED protein' *are unlawful* and in violation of parallel state and federal requirements because Defendant failed to provide a %DV for protein in the NFP calculated according to the PDCAAS methodology." ECF 1 ¶ 6 (emphasis added).

with the law and not made a protein claim in these circumstances. *See* ECF 1 at ¶¶ 52-55, 75; *compare Transunion*, 141 S. Ct. at 2199. When, as here, a plaintiff alleges he or she paid more money "than he or she otherwise would have," as a result of the defendant's conduct, then he or she has standing under both the UCL and Article III. *See Kwikset Corp. v. Superior Court*, 246 P.3d 877, 885-87 (Cal. 2011) (explaining that satisfying the "lost money or property" requirement for a UCL claim will also satisfy Article III standing); *Maya v. Centex Corp.*, 658 F.3d 1060, 1069 (9th Cir. 2011) (finding it is a "quintessential injury-in-fact" when a plaintiff alleges they have spent money they would not have spent but for defendant's actions); *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1104-07 (9th Cir. 2013) (finding plaintiff had standing under the UCL where he alleged he would not have purchased the product but for the false price information). Plaintiff does not allege a mere technical violation of the regulations, but the presence of an unlawful label that has a real and measurable economic cost to her.

### 2. Plaintiff's unlawful prong claims are not expressly preempted.

The preemption provision of the FDCA at issue here expressly preserves parallel or identical state law claims. *See* 21 U.S.C. § 343-1(a)(5); *see also Hawkins* at 769. Congress, thus, limited preemption to only state laws that "impose more or inconsistent burdens on manufacturers than the burdens imposed by the FDCA." *Krommenhock v. Post Foods, LLC*, 255 F. Supp. 3d 938, 951 (N.D. Cal. 2017). Sarah Lee does not dispute that these claims parallel the regulations and, thus, are not expressly preempted. *See e.g.,* ECF 20 at 14. Nor could there be any legitimate dispute on this point since the claim is that Sarah Lee failed to comply with the regulatory prerequisites for making a protein claim.

### 3. *Buckman* preemption does not apply.

Instead, Sarah Lee argues only that the unlawfulness claim is impliedly preempted under *Buckman v. Plaintiffs' Legal Committee*, 531 U.S. 341 (2001)—a theory this Court squarely rejected in *Morgan v. Wallaby Yogurt Co.*, 2013 U.S. Dist. LEXIS 144959 *19-24 (N.D. Cal. Oct. 4, 2013). In essence, Sarah Lee advocates for the Court to apply a novel interpretation of *Buckman* that incongruously *impliedly* preempts the same claims that the FDCA preemption

provision *expressly* allows. As this Court has already recognized, "a number of courts have rejected this contention." *Id.* (collecting cases). And they have done so for good reasons.

First and foremost, *Buckman* is an implied, judge-made type of preemption, and an implied doctrine can never override the word of Congress. Here, Congress set forth a clear intent in the preemption provision to preserve parallel or identical state law claims. *See* 21 U.S.C. § 343-1(a)(5). Indeed, the NLEA explicitly states that the Act "shall *not* be construed to preempt any provision of State law, unless such provision is *expressly* preempted under [21 U.S.C. § 343-1]." 21 U.S.C. § 343-1(c)(1) (emphasis added). Through that provision, Congress eviscerated implied preemption in this context. *See also Wyeth v. Levine,* 555 U.S. 555, 575 (2009) ("The case for federal pre-emption is particularly weak where Congress has indicated its awareness of the operation of state law in a field of federal interest, and has nonetheless decided to stand by both concepts and to tolerate whatever tension there [is] between them.") Nothing in *Buckman* interferes with that intent. *McCellan v. I-Flow Corp.,* 776 F.3d 1035, 1040 (9th Cir. 2015) (*Buckman* "left the door open to state-law claims 'parallel' to federal requirements.").

Sarah Lee nonetheless argues that *Buckman* preempts Plaintiff's unlawful claim because "they're entirely reliant on predicate FDCA violations". ECF 20 at 16.  But, Plaintiff is not suing under the FDCA, which would be preempted. Rather, just like the plaintiff in *Morgan,* Plaintiff is suing under independent state laws, including the Sherman Law, UCL, FAL and CLRA. *See Morgan,* 2013 U.S. Dist. LEXIS 144959, at *19-20 (claims were not impliedly preempted because "the plaintiffs are not seeking to enforce the FDCA—they are bringing strictly state law claims that happen to be based on the same requirements of the FDCA" (i.e., the Sherman Law)).

Sarah Lee relies primarily on two district court cases. ECF 20 at 19-20. One is *In re Trader Joe's Tuna Litigation,* 2017 WL 2408117 (C.D. Cal. June 2, 2017). That case directly undermines Sarah Lee's position. The order that Sarah Lee relies upon came down early in the case and dismissed claims that alleged solely violations of the federal regulations. 2017 WL 2408117 at *3. The claims were later allowed to proceed, and avoided preemption under *Buckman,* when the plaintiffs amended their complaint to allege violations of California's Sherman Law instead. *See In re Trader Joe's Tuna Litig.,* 289 F. Supp. 3d 1074, 1081 (C.D. Cal.

2017). The court expressly held that claims based on the Sherman Law "are not impliedly preempted because they are predicated on state-law duties that parallel the FDCA requirements." *Id.* at 1084. The fact that the Sherman Law "incorporates the FDCA requirements by reference" did not matter since it "results from consideration of practicalities." *Id.* at 1084-85. The court explained that "[i]f California were required to update its statutes every time the federal government changed a standard, it would constantly have statutes stating standards that did not mirror the federal scheme, which would then be expressly preempted by Section 343-1(a)." *Id.* But the "Ninth Circuit has held that states may provide its citizens a private right of action even where the federal scheme does not, which is what California has done here." *Id.*, *citing Stengel*, 704 F.3d at 1233. The reasoning applies with equal force here.

The other case Sarah Lee relies upon—*Chong*—is an outlier opinion that found in favor of implied preemption without much analysis and is now subject to a pending appeal. *See Chong, et. al. v. KIND LLC*, No. 22-15368 (9th Cir.). *Chong* held that *Buckman* impliedly preempted similar claims because the plaintiffs "are not pursuing pre-existing, traditional state tort law claims, rather they rely on California's Sherman Law, which post-dates and is entirely dependent on the FDCA, in that it expressly adopts the FDCA and regulations as state law." 2022 U.S. Dist. LEXIS 27438 at *10. The problems with *Chong*'s rationale are obvious. First, it conflicts with Congress's clear intent to allow state law claims identical to FDA requirements to proceed. Accepting *Chong*'s logic would impliedly preempt the same claims that Congress reserved for the states. That cannot be so. Second, nothing in *Buckman* says it automatically preempts state statutory claims simply because they post-date the FDCA.

*Chong* is an outlier. Most "courts in this District . . . routinely reject the argument that the Court's reasoning in *Buckman* justifies preemption of food labeling claims under the Sherman Law." *Vassigh v. Bai Brands LLC*, 2015 U.S. Dist. LEXIS 90675, *12-13 (N.D. Cal. 2015) (collecting cases); *see also Loomis v. Slendertone Distribution, Inc.*, 420 F. Supp. 3d 1046, 1074 (S.D. Cal. 2019) ("[D]istrict courts have routinely rejected arguments that state-law UCL, FAL, and CLRA food-labeling claims and related claims under the Sherman Law are impliedly preempted under § 337(a) and *Buckman*."). The Court should follow the better, more reasoned

approach set forth in *Vassigh, Morgan,* and *Trader Joe's* of allowing claims identical to FDA

requirements to proceed (i.e., the exact same claims Congress carved out from preemption).

**B.    Plaintiff's CLRA and Fraud Claims are Also Viable.**

**1.    Plaintiff's fraud and CLRA claims are not preempted.**

Sarah Lee argues that Plaintiff's fraud and CLRA claims are expressly preempted. As

explained above, the FDCA preemption provision expressly preserves parallel or identical state

law claims. *See* 21 U.S.C. § 343-1(a)(5); *see also Hawkins* at 769. Moreover, when assessing

preemption, courts must "start with the assumption that the historic police powers of the States

[are] not to be superseded by the Federal Act unless that was the clear and manifest purpose of

Congress." *Medtronic, Inc. v. Lohr,* 518 U.S. 470, 485 (1996) (internal quotation marks omitted)*;

see also Plumley v. Massachusetts,* 155 U.S. 461, 472 (1894) ("If there be any subject over which

it would seem the states ought to have plenary control . . . it is the protection of the people against

fraud and deception in the sale of food products."). Therefore, "[p]arties seeking to invalidate a

state law based on preemption bear the considerable burden of overcoming the starting

presumption that Congress does not intend to supplant state law." *Stengel v. Medtronic Inc.,* 704

F.3d 1224, 1227 (9th Cir. 2013) (internal quotation marks omitted).

Here, state and federal law agree that statements about the "amount or percentage of a

nutrient" like protein cannot be "false or misleading in any respect" when made on the front of a

package. *Id.*; *see also* 21 C.F.R. § 101.13(c) & (i)(3). Sarah Lee's preemption argument

necessarily fails because Plaintiff's fraud prong and CLRA claims are identical to that

requirement. *See Lily v. ConAgra Foods, Inc.*, 743 F. 3d 662, 665 (9th Cir. 2014). Indeed, every

court to address this question prior to *Nacarino* held that these exact claims were not preempted.

*See, e.g., Ulrich*, 2017 U.S. Dist. LEXIS 132202, *11–12; *Porter I*, 2016 U.S. Dist. LEXIS

163352 at *17–18; *Gubala*, 2016 U.S. Dist. LEXIS 32759, *40.

*Porter* is instructive. There, the front label claim was "60g Premium Protein."[5] *Porter I*,

2016 U.S. Dist. LEXIS 163352 at *4. Although, as here nitrogen testing supported the front label

---

[5] The claim's use of the term "premium" in *Porter* makes no difference. The protein claim was
misleading because the product did not provide the amount of protein claimed. *Porter I*, 2016

amount, plaintiffs alleged that the protein claim was misleading because the defendant added in non-essential amino acids that are high in nitrogen but of little nutritional value. *Id.,* at *5-6. This allowed the defendant to claim a higher protein content than the products actually delivered. *Id.* Defendant argued that the claim was preempted, because the "regulations permit manufacturers to calculate the total amount of protein" using the nitrogen method. *Id.,* at *14-15. The court rejected this argument and held that the claim was "not preempted" because plaintiffs plausibly alleged that "defendants failed to account for the protein quality in making the front-label statement, resulting in the type of false or misleading statement prohibited by § 101.13(i)(3)." *Id.* at *17-18.

*Ulrich* similarly dealt with a claim in which the defendant added low quality collagen proteins to its products, which "result[ed] in Products that effectively had less protein than they advertise" because "collagen protein is less digestible." *Ulrich*, 2017 U.S. Dist. LEXIS 132202, at *9-11. The court held that the claims were "not preempted." *Id.* at *12. As the court reasoned, "it appears to be a fair inference that [the] use of collagen protein isolate in its blend of proteins must have reduced digestibility of the protein in the Products" and it may "be misleading in a particular context to use the nitrogen method" which violates § 101.13(i)(3). *Id.* at *10-11.

Plaintiff's claims here are identical to *Ulrich* and indistinguishable from *Porter* as far as preemption is concerned. Sarah Lee uses low quality protein sources in its products that have PDCAAS scores of between 0.4 and 0.5. ECF 1 ¶ 29. Nutritionally speaking, this means that Sarah Lee's products provide *less than half* of the protein they advertise. ECF 1 at ¶ 19. The front labels are made even more misleading due to the fact that Sarah Lee omitted the %DV from the NFP even though *it was legally required to provide it*. The point of the %DV is to provide consumers with "a statement of the corrected amount of protein" in the product reflecting the quality of its protein. 21 C.F.R. § 101.9(c)(7)(i). Because Sarah Lee's front labels state a standalone protein *quantity* figure and do not give consumers *any* insights into the actual *quality* of the protein *anywhere* on the packaging, the front labels mislead consumers about the amount of

U.S. Dist. LEXIS 163352 at *4. As the court stated: "If the nitrogen method is exploited to inflate protein content, then *the amount of protein listed on the front label* may be false or misleading." *Porter II*, 2019 U.S. Dist. LEXIS 190495, at *10.

protein they will actually receive from consuming the product. This violates 21 C.F.R.

§ 101.13(i)(3), and parallel state law in the form of the UCL fraud prong and the CLRA.

Many of Sarah Lee's arguments stem from a fundamental misunderstanding about Plaintiff's theory of liability. Sarah Lee repeats *ad nauseum* that Plaintiff's claims require its front label number to "be adjusted for digestibility using" PDCAAS. *See* ECF 20 at 1, 8-9, 11, 13. Plaintiff's theory, however, is *not* that Sarah Lee *must* state anything at all about protein on its front labels. Rather, Plaintiff's theory is that Sarah Lee was prohibited from making the claims that it did because they are misleading in violation of parallel state and federal requirements.[6]

### i. FDA recognizes that information stated inside the NFP can be "false or misleading" when stated elsewhere.

Sarah Lee argues that the FDA "expressly permit[s]" its front label protein claims because § 101.9(c)(7) allows for nitrogen testing inside the NFP.  ECF 20 at 8. Setting aside the irony of Sarah Lee relying on a regulation with which it fails to comply (because it makes protein claims while failing to abide by FDA's restrictions on those claims), even *had* Sarah Lee complied with this regulation it would not justify its front label claim because § 101.9(c)(7) "permission" to use nitrogen testing relates only to *inside the NFP*. No regulation expressly authorizes standalone, nitrogen-based quantity claims *on the front label*.[7] Rather, the *only* requirement for front label quantitative claims is that they cannot be "false or misleading in any respect." § 101.13(i)(3).

---

[6] There are a variety of ways in which Sarah Lee could have made its labels not misleading. These include making no protein claim, stating protein based solely on the PDCAAS method, or by using some combination of both methods (e.g., "6g total protein, 2.5g digestible protein"). Each of these remedies is permissible under the regulations. But, as it stands now, Sarah Lee labels fail to account for quality in any manner, which makes them misleading in violation of § 101.13(i)(3). Notably, making no protein claims is the only lawful option in the absence of a %DV in the NFP calculated using the PDCAAS method.

[7] The Court should read the FDA's silence as an intent to regulate these types of claims in conjunction with the states. *See Jones v. ConAgra Foods, Inc.*, 912 F. Supp. 2d 889, 898 (N.D. Cal. 2012) ("[t]he FDA's inaction with respect to the term 'natural' implies that the FDA does not believe that the term 'natural' requires 'uniformity in administration.'"). When FDA has exempted certain nutrient content claims from § 101.13(i), it has done so explicitly. Examples include "fat free," "no fat," "zero fat," or "negligible source of fat" on labels where certain other conditions are met. *See* § 101.62(b). FDA's failure to expressly allow Sarah Lee's claims, thus, weigh in favor of finding that Plaintiff's claims parallel FDA regulations.

At first blush, it may seem incongruous that an FDA-approved testing method for inside the NFP could be misleading when stated elsewhere on the packaging. The concept is something *Nacarino* and *Chong*— the two main cases that Sarah Lee relies upon—ultimately failed to grasp. But a dive into the FDA regulations and official agency commentary makes clear that that is the precise dichotomy FDA envisions. *See also Porter II*, 2019 U.S. Dist. LEXIS 190495, at *9 ("That a protein-content calculation might be misleading when on the front label but permitted in the nutrition panel does not mean plaintiffs' theory fails as a matter of law.").

As explained above, FDA has two sets of rules: one for inside the NFP and another set for claims about nutrients made elsewhere on the packaging. FDA went out of its way in enacting § 101.13(c) to provide that information stated inside the NFP does not constitute a nutrient content claim and, therefore, is exempt from the special rules that apply to nutrient content claims. But, if that same information is stated elsewhere on the packaging, it becomes a nutrient content claim and may *only* be stated on the front package if it complies with § 101.13(i)(3)'s prohibition against "false or misleading" amounts or percentages. If a nutrient claim violates *any* provision of § 101.13, then it "may not be made on the label" under § 101.13(b).

The rules governing nutrient content claims (i.e., § 101.13(i)(3)) clearly contemplate that stating a pure "amount or percentage of a nutrient" can sometimes be "misleading." Indeed, the FDA has long explained that nutrient claims in isolation could be "misleading for lack of completeness, and could deceive consumers about the nutritional value of the food . . . and its nutritional weaknesses." 38 Fed. Reg. 2125. FDA accordingly structured its regulations to specifically account for the possibility that an "amount or percentage"—while not definitively false—could be misleading when stated outside the context of the NFP. This is why the Ninth Circuit, in interpreting these very same regulations, has explicitly held that "a requirement to state certain facts in the nutrition [facts] label is not a license to make that statement elsewhere on the product." *Reid v. Johnson & Johnson*, 780 F.3d 952, 960 (9th Cir. 2015).

The reason for this dichotomy is that nutrient content claims are purely voluntary and, therefore, subject to heightened scrutiny via § 101.13(i)(3). The FDA recognizes that although some statements may be sufficient for purposes of the NFP—which is to provide an expedient

1   summary of nutrition data—they may be misleading outside of that context, and thus not an

2   appropriate basis on which to ***market a product***. *See* 56 Fed. Reg. 60366 (Nov. 27, 1991) (FDA

3   views nutrient content claims, which are voluntary, as a marketing tool).

4           **ii.     FDA deems Sarah Lee's front label claims to be misleading.**

5           FDA has addressed protein specifically. In official, published guidance, the FDA ***has***

6   ***recognized*** that stating nitrogen quantity alone ***can be misleading*** in this very context, i.e., on low

7   quality protein products. When promulgating § 101.9(c)(7)—the same regulation Sarah Lee

8   claims authorizes its front label claims—the FDA stated that "***protein quantity alone can be***

9   ***misleading on foods that are of low protein quality.***" 58 Fed. Reg. 2079 at 2101-2 (emphases

10  added). This is because the FDA knows that "different food protein sources are not equivalent in

11  their ability to support growth and body protein maintenance." 56 Fed. Reg. 60366, § B.

12          In other words, the FDA knows that one of its approved protein measurement techniques

13  is misleading in the exact context relevant to this case. As the FDA explained in that same

14  guidance, it generally permits the nitrogen method not because it has determined the method is

15  inherently non-misleading in all contexts, but because it is cheap, and "[b]ecause protein intakes

16  generally are adequate and not a public health concern for" adults. 58 Fed. Reg. 2079, at 2102. As

17  such, FDA decided that the "additional costs associated with determination of the PDCAAS ... are

18  not warranted" most of the time. *Id*. However, if a product chooses to advertise itself on the basis

19  of protein by making a protein claim, then the rules change, and the expense of PDCAAS is

20  warranted precisely to ensure that consumers are not "***misled*** by information on only the ***amount***

21  of protein present." *Id*. (emphasis added).

22          Moreover, the FDA structured the protein regulations ***to account for the fact*** that nitrogen

23  quantity alone can be misleading on low quality protein products. Indeed, § 101.9(c)(7) explicitly

24  ***prohibits*** a manufacturer from stating a nitrogen-based protein quantity figure ***alone*** in the NFP

25  when a product makes a front label protein claim. It requires that if a manufacturer is advertising

26  a product on the basis of protein, it can no longer simply state a nitrogen based quantity figure in

27  the NFP; instead, it ***must*** provide, ***immediately adjacent*** to the quantity figure, "***a statement of***

28  ***the corrected amount of protein***" in the product based on PDCAAS and expressed as a %DV. 21

C.F.R. § 101.9(c)(7)(i)-(iii) (emphasis added). The FDA, again, explicitly stated when promulgating this requirement that it was "to prevent [consumers] from being **misled** by information on **only the amount** of protein present" in the NFP. 58 Fed. Reg. 2079, 2102 (emphasis added).[8]

FDA underscored this point, stating that "since many consumers have a limited knowledge and understanding of the amounts of nutrients that are recommended for daily consumption, **a statement declaring that the product contained a specified amount of a nutrient could be misleading**." 56 Fed. Reg. 60421 (Nov. 27, 1991) (emphasis added). FDA explained that "[b]y its very presence, such a statement could give consumers who were unfamiliar with the dietary recommendations the false impression that the product would assist them in maintaining healthy dietary practices relative to the amount of the nutrient consumed when it, in fact, would not." *Id.*

The clear implication of the structure of the regulatory scheme and FDA's position is that just like stating protein quantity alone is prohibited in the NFP because it is misleading, so too is stating protein quantity alone on the front of the package on a low quality protein product. In other words, since the FDA prohibits manufacturers from stating protein quantity alone on the back panel when the product is advertising itself on the basis of protein, then, necessarily § 101.13(i)(3) prohibits manufacturers from misleadingly advertising their low quality protein products on the basis of nitrogen quantity alone.

### iii. *Chong* and *Nacarino* do not change the result.

Sarah Lee argues that two recent opinions finding in favor of preemption—*Chong* and *Nacarino*—control the outcome here. They do not. As *Nacarino* itself notes, numerous other courts have ruled the opposite way, finding that similar claims are not preempted. 2022 U.S. Dist. LEXIS 23409, at *11 (citing cases).

---

[8] *Nacarino* downplayed this aspect of the regulations by reasoning that the %DV "is not to remedy an otherwise misleading figure, but to supply protein-conscious consumers with information that gives them further assistance in deciding what to buy." 2022 U.S. Dist. LEXIS 23409, at *9. But that rationale does not hold up in light of the official agency opinion stating the exact opposite, which *Nacarino* does not appear to consider or discuss.

*Chong* was decided after *Nacarino* and essentially adopted its reasoning without much discussion. *See Chong*, 2022 U.S. Dist. LEXIS 277438, at *9. And, *Nacarino* simply did not consider preemption as it relates to the context here, despite Sarah Lee's assertions otherwise. 2022 U.S. Dist. LEXIS 23409, at *6. Regardless, *Nacarino* agreed with the general premise that nitrogen-based front label protein claims "may well be 'misleading' in the colloquial sense" due to the way low quality proteins operate in the human body. *Id*. at *7-*8. It nevertheless concluded that such claims could never be misleading in the "regulatory sense" of § 101.13(i)(3). *Id*. According to the Court, the claims were not misleading in the "regulatory sense" because § 101.9(c)(7) "authorizes" a manufacturer to state protein quantity via "the nitrogen-content method without quality adjustment . . . in the Nutrition Facts label" and "to hold otherwise would be to find that an FDA-approved protein measurement technique is inherently misleading." *Id.*

As explained above, *Nacarino*'s reasoning conflicts directly with FDA's official opinion that "***protein quantity alone can be misleading on foods that are of low protein quality.***" 58 Fed. Reg. 2079 at 2101-2 (emphases added). Indeed, how the human body utilizes protein and whether that is accurately reflected in various protein measurement techniques is clearly within the FDA's "scientific expertise" and *Nacarino* should not have substituted its "judgment for that of the agency" on whether an FDA approved technique can be misleading in particular contexts. *Friends of the Santa Clara River v. United States Army Corps of Eng'rs*, 887 F.3d 906, 924 (9th Cir. 2018). Given FDA's official position, *Nacarino*'s distinction between misleading statements in the "colloquial sense" versus those in the "regulatory sense" is a mistaken one. FDA makes clear that claims like Sarah Lee's may be misleading in both senses.

*Nacarino* is also flawed because "[a] regulation cannot be susceptible to a construction that ignores or renders meaningless parts of its language." *Mont. Air Chapter No. 29, Ass'n of Civilian Technicians, Inc. v. Fed. Labor Relations Auth.*, 898 F.2d 753, 762 (9th Cir. 1990). But *Nacarino*'s conclusion that a testing methodology is inherently non-misleading so long as the FDA has approved it for use in the NFP renders §§ 101.13(c) and 101.13(i)(3) meaningless. If *Nacarino*'s interpretation were correct, then any information from the nutrition facts panel would automatically qualify as a permissible front-of-pack nutrient content claim because all of those

figures are necessarily supported by an FDA-approved testing methodology. But the FDA went out of its way in § 101.13(c)—which *Nacarino* did not discuss—to make clear that information stated in the NFP does ***not automatically qualify*** as a nutrient content claim and can be stated on the front package ***only*** if it meets the other nutrient content claim requirements. That includes § 101.13(i)(3), which clearly contemplates that stating the "amount or percentage of a nutrient" can sometimes be "misleading" at least in some respects.

Given that FDA has stated that "protein quantity alone" on low quality protein products "can be misleading," 58 Fed. Reg. 2079 at 2101-2, there is no "simple," magic bullet solution that so long as the FDA has approved of a testing method for the NFP, it has determined the method can ***never*** be misleading in any other context. Instead, the FDA recognizes that some statements may be misleading outside of that context of the NFP. That is the case here.

> ### iv. This case presents exceptional circumstances akin to *Reid* and *Hawkins*.

The Court is not bound by *Nacarino* and *Chong*, which are district court opinions. But it is bound by the Ninth Circuit opinions in *Reid* and *Hawkins*, which addressed the issue within the trans fat context.

In *Reid*, the products contained approximately 0.5 grams of trans fat per serving, which NFP regulations permitted to be rounded to "0 grams of trans fat" for the back panel. *Reid*, 780 F.3d at 963. The defendant stated "No Trans Fat" on the front label, which it contended was permissible because it was "synonymous" with what FDA regulations *required* for the NFP. *Id.* The Ninth Circuit agreed the statements were equivalent, but held "it makes no difference here." *Id.* "While a required statement inside a nutrition label escapes regulations reserved for nutrient content claims, ***the identical statement outside of the nutrition label is still considered a nutrient content claim and is therefore subject to section 101.13***," which prohibits amounts and percentages from being misleading in any respect. *Id.* (emphasis added). Since the defendant's products contained up to 0.5 grams of trans fat per serving, "its 'No Trans Fat' claim is misleading in at least one respect." *Id.* Accordingly, the regulations specifying what was permissible within the NFP did not preempt the plaintiff's claims about what was misleading on the front of the package. *Id.* In *Hawkins,* the Ninth Circuit extended this point to the front label

statement "0 grams trans fat per serving," which was *identical* to the statement *required* in the NFP. 906 F.3d at 766, 771–72.

As in *Reid* and *Hawkins*, Sarah Lee's front label claims are misleading in violation of § 101.13(i)(3) and parallel state laws, so the existence of regulations permitting Sarah Lee to make protein quantity statements alone inside the NFP where no protein claim is made does not preempt Plaintiff's claims as to the front of the package.

*Nacarino* found that *Reid* and *Hawkins* both state the "exception, not the rule" to whether NFP statements can qualify as nutrient content claims. 2022 U.S. Dist. LEXIS 23409, at *10. But even if that were true generally, *Nacarino* ignores that this case also presents such an "exception." This case centers *specifically* on products made up of low quality proteins. Plaintiff's position is ***not*** that nitrogen-testing is inherently misleading. When a product consists of high quality proteins, nitrogen testing can provide an accurate, non-misleading picture of protein content. The problem arises when a product consists of low-quality proteins like Sarah Lee's. In that scenario, nitrogen testing yields inflated numbers—***which the FDA has explicitly recognized***. It suggests that consumers will receive all the protein claimed, even though that is simply not true. Here, over half the protein is useless to humans. ECF 1 at ¶ 19. While the raw protein quantity may be true in the abstract, it is fundamentally misleading when stated without any context as to its quality.

Moreover, just as in *Reid* and *Hawkins*, where the FDA had issued guidance calling into question front of pack "no trans fat" claims, the FDA here has also issued guidance explicitly recognizing that "protein quantity alone can be misleading on low quality protein products." In other words, the FDA recognizes the problem and it structured its regulations to address it both in the NFP through § 101.9(c)(7)(i)-(iii) and on the front through §§ 101.13(c) and 101.13(i)(3).

*Nacarino* also distinguished *Reid* and *Hawkins* on the basis that the claims "were uncontrovertibly false in a way that the claim in this case is not: It is not true to say that a product does not contain fat when it does." *Nacarino*, 2022 U.S. Dist. LEXIS 23409, at *11. But, the regulation at issue in this case— § 101.13(i)(3)—does not prohibit only "uncontrovertibly false" claims; it prohibits ***misleading*** claims too. By definition, a claim is misleading when "although true, [it] is either actually misleading or [] has a capacity, likelihood or tendency to deceive or

confuse the public." *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1162 (9th Cir. 2012). So, the fact that this case may not present a literal falsity is of no moment. *Nacarino* necessarily found that Kashi's front label protein claims may be misleading in this sense. 2022 U.S. Dist. LEXIS 23409, at *7. And, as explained above, the FDA agrees. This precludes preemption.

### v.    The FDA webpage is irrelevant.

Sarah Lee also claims that industry guidance FDA published on its website ("FDA webpage") supports its position. In all likelihood, Sarah Lee will direct the Court to a recent decision ruling in favor of preemption that based its opinion on the FDA webpage. *See Brown v. Natures Path Foods, Inc.*, 2022 U.S. Dist. LEXIS 42760, at *15-17 (N.D. Cal. Mar. 10, 2022). In *Brown*, the court determined that the FDA webpage "clarifie[s] that protein content claims may be based on 'either of the methods mentioned' in section 101.9(c)(7)—that is, the 'nitrogen method' or the 'protein digestibility-corrected' figure." *Id. Brown* held that preemption was warranted because "the FDA has now made clear that its regulations do not require protein content claims to adjust for digestibility or to be calculated using amino acid contest testing."[9] *Id*.

*Brown*'s interpretation of the FDA webpage is flawed for a number of reasons. First, the FDA webpage does not pronounce a blanket rule that nitrogen testing is *always* allowed for front label claims. Nor could it because it does not even consider the primary regulation at issue in this case: § 101.13(i)(3)'s prohibition against false or misleading claims. As explained above, nitrogen testing can be an accurate method for some foods, such as those consisting of high quality proteins, but it is misleading when used for foods with low quality proteins, like Sarah Lee's.

Further, *Brown* misses the context of the FDA webpage. The FDA webpage purports to interpret § 101.13(o), the regulation about compliance. Both § 101.13(o) and the FDA webpage's discussion of it are irrelevant because "determining compliance" presupposes that the claim is ***already authorized*** by the nutrient content claim regulations. Indeed, § 101.13(b) is clear that a nutrient content claim "may not be made on the label" if it violates *any* of the provisions of § 101.13. Nothing on the webpage says that manufactures are now absolved from meeting these

---

[9] Like Sarah Lee, *Brown* misinterpreted Plaintiff's claims. Plaintiff does not allege that Sarah Lee "adjust" the front number for digestibility. *See supra*, n.6.

other requirements, or automatically satisfies them simply by using a testing method referenced in § 101.9(c). Indeed, that would make no sense given § 101.13(c), as explained above. Instead, only once a claim satisfies all of these other provisions, including § 101.13(i)(3), does § 101.13(o) come into play. In light of this, the FDA webpage is perfectly consistent with Plaintiff's claims. Where nitrogen testing is non-misleading, such as on high quality proteins, it can be used to advertise protein quantity on the front. When PDCAAS is non-misleading, it is used instead.

Moreover, in *Kisor*, the Supreme Court admonished lower courts for doing exactly what *Brown* did, which is abdicate its responsibility to interpret regulations in favor of unofficial agency statements. *Kisor v. Wilkie*, 139 S. Ct. 2400 (2019). Under *Kisor*, the Court cannot do so unless, after deploying all the interpretative methods in the "legal toolkit," the court finds that the regulations at issue are "genuinely ambiguous," and then only if the proffered interpretation is reasonable, and represents the *official* position *of the agency*. *Id*. at 2405-06. Unless all of these are satisfied, the Court cannot give the proffered interpretation *any* weight.

The FDA webpage here is not official agency position set forth in the federal register. The regulations at issue are not "genuinely ambiguous" either. Section 101.13(o) – the regulation FDA interprets – provides that "compliance with requirements for nutrient content claims …will be determined using *the* analytical methodology [singular] prescribed for *determining compliance with nutrition labeling in § 101.9.*" This does not refer to the multiple testing methodologies (plural) described in § 101.9 to *measure* nutrients; rather, it incorporates by reference *the* analytical methodology in § 101.9 the FDA uses for *determining compliance*—i.e., § 101.9(g), which states "Compliance with this section shall be determined as follows . . ." and then sets forth the 12-sample size requirement, recordkeeping obligations, and the like.

**C.   Sarah Lee's Remaining Arguments Are Without Merit.**

**1.   Plaintiff has pleaded her fraud claim with the required particularity.**

Sarah Lee argues that Plaintiff's fraud claim fails due to a failure to plead justifiable reliance with respect to the %DV. As explained above, Plaintiff's UCL claim is not so limited. Rather, Plaintiff alleges that Sarah Lee's front label claim was unlawful because Sarah Lee made the claim without complying with FDA's requirements. Since the UCL unlawful claim does not

1   sound in fraud, (see *supra*, p.8 & n.3), there is no requirement to plead it with particularity, so

2   Sarah Lee's argument necessarily fails.  In any event, Plaintiff has adequately pled reliance.

### 2. Plaintiff is entitled to plead remedies in the alternative to her monetary relief claims.

Sarah Lee also argues that the equitable claims should be dismissed because Plaintiff has

an adequate remedy at law. This argument misses the fact that Plaintiff is entitled to, and has,

plead remedies in the alternative. *See* ECF 1 ¶¶ 77, 80, 87, 99, 100, 115. The CLRA and UCL's

remedies are not exclusive, but in addition to, other procedures or remedies. *See Madani v.

Volkswagen Grp. of Am., Inc.*, 2019 U.S. Dist. LEXIS 133926, at *26 (N.D. Cal. Aug. 8, 2019);

*Luong v. Subaru v. American, Inc.*, 2018 U.S. Dist. LEXIS 74611, at *7 (N.D. Cal. May 2, 2018).

Even so, Plaintiff does allege she has no adequate remedies at law. As this Court

recognizes, *Sonner* requires only that a plaintiff *plead* there are no adequate remedies at law.[10]

*See Johnson v. Trumpet Behavioral Health, LLC*, 2022 U.S. Dist. LEXIS 3706, at *7-10 (N.D.

Cal. Jan. 7, 2022) (Orrick, J.) (holding it is sufficient under *Sonner* for a plaintiff to plead she has

no adequate remedy at law so long as it is not *only* plead in the alternative) (emphasis added); *see

also Guthrie v. Transamerica Life Ins. Co.*, 2021 U.S. Dist. LEXIS 182281, at *4 (N.D. Cal. Sept.

23, 2021) (Orrick, J.); *Brown v. Madison Reed*, 2021 U.S. Dist. LEXIS 164002, *12 (N.D. Cal.

Aug. 30, 2021) (Orrick, J.). That is exactly what Plaintiff has done here.

### 3. Plaintiff has standing to seek injunctive relief based on potential future harm.

Finally, Sarah Lee contends that Plaintiff lacks standing for injunctive relief because

Plaintiff has not sufficiently allege an intent to buy the products in the future. *See* ECF 20 at 23.

Plaintiff alleges, however, that she continues to desire to purchase the referenced products in the

future and cannot rely on Sarah Lee's labels. ECF 1 at ¶ 56. This is sufficient to confer standing.

*See Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 966-72 (9th Cir. 2018) (plaintiff properly

---

[10] The procedural posture of Plaintiff's suit is also inapposite to the facts alleged in *Sonner*, where the plaintiff was seeking a procedural advantage on the eve of trial. *See In re JUUL*, 2020 U.S. Dist. LEXIS 197766, at *225-27 (N.D. Cal. Oct. 23, 2020). The present case is at its earliest stages, making a finding on whether the claims will provide an adequate remedy premature.

Pl's Opp. to Def.'s Mtn. to Dismiss

1  alleged a "threat of imminent or actual harm by not being able to rely on [the] labels in the future"

2  that is "sufficient to confer standing to seek injunctive relief.")

3          Defendant argues that Plaintiff's allegations regarding future purchases are only

4  hypothetical and based on potential reformation of the product. But, again, Plaintiff alleges she

5  would likely purchase a reformulated version of Defendant's products, which demonstrates the

6  requisite harm to confer standing and suffices at the pleading stage. ECF 1 at ¶ 56. *See also*

7  *Nacarino*, 2022 U.S. Dist. LEXIS 20671, at \*37-39 (plaintiff had standing when she specified the

8  terms under which she would purchase the product again); *Vizcarra v. Unilever U.S., Inc.*, 2020

9  U.S. Dist. LEXIS 125649, at \*6 (N.D. Cal. July 16, 2020) (plaintiff had standing when she would

10  purchase a product again "if it were truly flavored as labeled and advertised").

11  **V.     CONCLUSION**

12          For the foregoing reasons, the Court should deny Defendant's Motion to Dismiss.

13

14  Dated: March 28, 2022

15                                              **GUTRIDE SAFIER LLP**

16                                              */s/Seth Safier/s/*
                                                Seth A. Safier, Esq.
17                                              Marie A. McCrary, Esq.
                                                Hayley Reynolds, Esq.
18                                              100 Pine Street, Suite 1250
                                                San Francisco, CA 94111
19

20                                              *Attorneys for Plaintiff*

21

22

23

24

25

26

27

28