1

2

3

4

UNITED STATES DISTRICT COURT

5

NORTHERN DISTRICT OF CALIFORNIA

6

7

MOLLY BROWN,

Plaintiff,

8

9

v.

10

VAN'S INTERNATIONAL FOODS, INC.,

Defendant.

11

Case No.  22-cv-00001-WHO

**ORDER GRANTING MOTION TO
DISMISS AND DENYING MOTION TO
STAY**

Re: Dkt. Nos. 20, 22

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

In this putative class action, plaintiff Molly Brown contends that the packaging for certain
types of frozen waffles and pancakes produced by Defendant Van's International Foods, Inc.
("Sara Lee")[1] misleadingly claims to provide specific amounts of protein per serving in violation
of state and federal law.  Sara Lee moved to dismiss and to stay pending the appeal of a similar
case.  For the reasons provided below, I GRANT the motion to dismiss and DENY the motion to
stay.

Brown articulates two separate theories regarding the allegedly misleading protein claim.
First, she contends that a protein claim unadjusted for digestibility is inherently misleading, but
this legal theory is preempted by the Food, Drug, and Cosmetic Act (FDCA).  Her claims based on
this first theory are dismissed with prejudice.  Brown next argues that such a protein claim is
unlawful where the digestibility-adjusted total is omitted from the Nutrition Facts panel.  To the

---

[1] Sara Lee Frozen Bakery manufactures and labels the frozen pancake and waffle products at issue in this case, which
are branded under Van's International Foods, Inc.  *See* Motion to Dismiss [Dkt. 20] at 1.  The parties both refer to
defendant as Sara Lee in their briefing.  *Id.*; Opposition to Motion to Dismiss [Dkt. 23] at 1.

United States District Court
Northern District of California

extent that Brown is arguing that the front-label protein claim is misleading *because of* the missing digestibility-adjusted figure in the Nutrition Facts panel, Brown lacks standing because she fails to show that she relied upon the omitted information.  That claim is dismissed with leave to amend.  During the hearing, counsel for Brown advanced a third theory that the front-label protein claim is unlawful because it violates 21 C.F.R. § 101.13(n).  While at a first glance this argument appears plausible, I will not discuss it in this Order.  I will reserve consideration of it until the parties have had an opportunity to address it in subsequent briefing.  Brown should include allegations related to this theory in her amended complaint if appropriate.

**BACKGROUND**

**I.      REGULATORY BACKGROUND**

Protein is essential for a healthy diet, so consumers often select foods based on protein content.  As a quick trip to the grocery store reveals, savvy food manufacturers commonly advertise protein content on the packaging of their products to attract protein-conscious consumers.  When one brand of frozen waffles claims eight grams of protein, and another ten, it is an easy bet as to which one a protein-conscious consumer will choose, all other things being relatively equal.  But as it turns out, these protein figures may not be as comparable as they seem.

Protein is not a monolithic substance, but rather consists of chains of amino acids.  Different combinations of amino acids make different types of protein.  And the ability of the human body to use protein depends on its composition; certain combinations of amino acids are more digestible than others.  As a result, from the perspective of a human consumer, protein quality varies.  Whey protein, for example, is particularly high quality, as it is fully digestible by humans.  But the protein in oats is lower quality, as roughly half of oat protein is not digestible by (and therefore, not beneficial to) the human body.  Due to the difference in protein quality, two frozen waffles that both contain ten grams of protein may vary significantly in the amount of protein that is usable by the human consumer.

In 21 C.F.R. § 101.9, the Food and Drug Administration ("FDA") identifies what a manufacturer can (and sometimes, must) include in the Nutrition Facts label—the box on the back or side of the packaging that lists the amounts of relevant nutrients. When it comes to protein, the Nutrition Facts label must include "the number of grams of protein in a serving, expressed to the nearest gram." 21 C.F.R. § 101.9(c)(7). This figure may be calculated by multiplying the product's nitrogen content by a factor of 6.25. *See id.* ("Protein content may be calculated on the basis of the factor 6.25 times the nitrogen content of the food . . . "). The parties refer to this manner of calculating protein quantity as "the nitrogen method." *See, e.g.*, Motion to Dismiss ("MTD") [Dkt. 20] at 4; Opposition to Motion to Dismiss ("MTD Opp.") [Dkt. 23] at 4. The amount of protein may also be measured by calculating its amino acid content (a technique that the parties refer to as the "protein digestibility-corrected amino acid score" or "PDCAAS"). As the complaint describes the procedures, the PDCAAS method will always be the more reliable technique.

In addition to section 101.9(c)(7), which governs statements about protein within the Nutrition Facts label, there is a more general provision—section 101.13—that governs statements about nutrients outside the Nutrition Facts label, such as a statement made on the front of the packaging. 21 C.F.R. § 101.13. The default rule is that manufacturers may not make any statements about the nutrients in their products beyond what is required in the Nutrition Facts label. But there are exceptions for numeric claims: a product's packaging "may contain a statement about the amount or percentage of a nutrient if . . . [t]he statement does not in any way implicitly characterize the level of the nutrient in the food and it is not false or misleading in any respect." *Id.* § 101.13(i)(3). The regulations provide two examples of permissible nutrient content statements: "100 calories" or "5 grams of fat." *Id.*

Importantly, if the packaging contains statements about protein outside the Nutrition Facts label, then the manufacturer must include certain information on the Nutrition Facts label. *Id.*

United States District Court
Northern District of California

§ 101.9(c)(7)(i). The additional statement is called a "nutrient content claim." *See* 21 C.F.R.

§ 101.13(c) ("Information that is required or permitted . . . to be declared in nutrition labeling . . .

is not a nutrient content claim . . . If such information is declared elsewhere on the label or in

labeling, it is a nutrient content claim and is subject to the requirements for nutrient content

claims."). When a product makes such a protein content claim, the manufacturer must ensure that

the Nutrition Facts label includes a "statement of the corrected amount of protein per serving,"

expressed as a "Percent of Daily Value." 21 C.F.R. § 101.9(c)(7)(i). This figure takes the "actual

amount of protein" from the nutrition label and adjusts it for digestibility based on the product's

"protein digestibility-corrected amino acid score," which, again, uses the PDCAAS method.

*Id.* § 101.9(c)(7)(ii).

## II.   FACTUAL BACKGROUND

Sara Lee manufactures, advertises, and sells a range of products, including the frozen

waffles and pancakes at issue in this case (the "Products"). Complaint ("Compl.") [Dkt. 1] ¶ 16.

According to the allegations in the complaint, Sara Lee advertises that the Products contain certain

amounts of protein by including the amount of protein on the front of the packaging, rather than

just in the Nutrition Facts label. *Id.* ¶¶ 2, 16. The packaging for Sara Lee's Power Grains Protein

Original Waffles, for instance, features a "10g PLANT-BASED protein" statement on the front

cover. *Id.*  ¶¶ 2, 17. The packaging does not include a digestibility-adjusted protein figure

(expressed as a percent daily value) on the Nutrition Facts panel. *Id.* ¶¶ 6, 18, 39.

Brown, a citizen of California, began purchasing the Products in 2019 and continued to

purchase them until February 2021. *Id.* ¶ 52. Brown alleges that she saw the front-label protein

claims regarding the specific number of grams of protein per serving and relied upon them in

deciding to purchase the Products. *Id.* ¶ 53.

Brown asserts that the Products' front-label statements regarding the protein content (e.g.

4

"10g PLANT-BASED protein") are misleading because the Products contain low quality proteins, which reduce the amount of digestible or usable protein that the Products deliver to the human body. As noted above, certain types of protein (such as those from animal sources) contain all of the essential amino acids and are able to be fully digested and used by the human body. *Id.* ¶¶ 3, 29. The primary protein sources for the Products, on the other hand, are wheat and oats, which do not contain all of the essential amino acids and are thus not able to be fully digested by the human body. *Id.* ¶¶ 7, 29. Protein from wheat and oats typically have a PDCAAS in the range of .4 and .5, meaning that only 40–50 percent of the plant protein consumed will be digested and used by the human body. *Id.*

Brown challenges two aspects of the Products' front-label protein statements. First, she argues that the front-label is inherently misleading because it prominently advertises a specific amount of protein per serving without adjusting for protein digestibility. *Id.* ¶¶ 7, 38. Second, she argues that the front label is unlawful because the Products fail to include the "percent daily value" figure that FDA regulations require in the Nutrition Facts panel on the back of the package. *Id.* ¶¶ 6, 39. Based on these facts, Brown filed suit against Sara Lee on behalf of herself and other similarly situated consumers in the United States and brought the following five causes of action: (i) unlawful, unfair, and fraudulent trade practices in violation of Business & Professions Code § 17200 (UCL); (ii) violation of the Consumers Legal Remedies Act (the CLRA), California Civil Code § 1750 *et seq.*; (iii) false advertising under Business & Professions Code § 17500 (FAL); (iv) common law fraud, deceit, and/or misrepresentation; and (v) unjust enrichment. *Id.* ¶¶ 66–116. The parties do not dispute that I have jurisdiction under 28 U.S.C. § 1332(d)(2).

## LEGAL STANDARD

### I.   MOTION TO DISMISS

#### A.      Rule 12(b)(1): Subject Matter Jurisdiction

Under Federal Rule of Procedure 12(b)(1), a district court must dismiss a complaint if it

lacks subject-matter jurisdiction to hear the claims alleged in the complaint.  Fed. R. Civ. P. 12(b)(1).  "Standing is a threshold matter central to our subject matter jurisdiction."  *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007).  "The Supreme Court has made clear that when considering whether a plaintiff has Article III standing, a federal court must assume *arguendo* the merits of his or her legal claim."  *Zeiger v. WellPet LLC*, 304 F. Supp. 3d 837, 843 (N.D. Cal. 2018) (quoting *Lorenz v. Safeway, Inc.*, 241 F. Supp. 3d 1005, 1014 (N.D. Cal. 2017)).

### B.     Rule 12(b)(6): Failure to State a Claim

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted.  To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible when the plaintiff pleads facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).  There must be "more than a sheer possibility that a defendant has acted unlawfully."  *Id.*  While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555, 570.

In deciding whether a claim has been stated upon which relief can be granted, the court accepts all factual allegations as true and draws all reasonable inferences in favor of the plaintiff.  *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).  "[A]llegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences," however, need not be "accept[ed] as true."  *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (internal quotation omitted).

If the court dismisses a complaint, it "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured

by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)).  In making this determination, the court should consider factors such as "the presence or absence of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party and futility of the proposed amendment."  *Moore v. Kayport Package Express*, 885 F.2d 531, 538 (9th Cir. 1989) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

### C.   Rule 9(b): Heightened Pleading for Fraud Claims

Claims sounding in fraud or mistake are subject to the heightened pleading standard of Federal Rule of Civil Procedure 9(b), which requires that such claims "state with particularity the circumstances constituting fraud or mistake," Fed. R. Civ. P. 9(b), including "the who, what, when, where, and how of the misconduct charged."  *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal quotation marks and citation omitted). "The plaintiff must set forth what is false or misleading about a statement, and why it is false."  *Id.*  The allegations of fraud "must be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong."  *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007). A plaintiff claiming fraud must also plead reliance.  *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 326–27 (2011) (UCL); *Princess Cruise Lines, Ltd. v. Superior Court*, 179 Cal. App. 4th 36, 46 (2009) (CLRA).

## II.   MOTION TO STAY

A district court has discretionary power to stay proceedings in its own court under *Landis v. North American Co.*, 299 U.S. 248, 254 (1936).  *See Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1109 (9th Cir. 2005).  The Ninth Circuit has set out the following framework for evaluating whether a *Landis* stay is proper:

Where it is proposed that a pending proceeding be stayed, the competing interests

which will be affected by the granting or refusal to grant a stay must be weighed. Among those competing interests are the possible damage which may result from the granting of a stay, the hardship or inequity which a party may suffer in being required to go forward, and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay.

*Id.* at 1110 (citing *Landis*, 299 U.S. at 268).

When weighing the relevant interests, the court must be mindful that "if there is even a fair possibility that the stay for which he prays will work damage to someone else," the moving party "must make out a clear case of hardship or inequity in being required to go forward." *Id.* at 1112 (internal quotation and citation omitted). "Only in rare circumstances will a litigant in one cause be compelled to step aside while a litigant in another settles the rule of law that will define the rights of both." *Id.* at 1109–10 (citing *Landis*, 299 U.S. at 255). "[B]eing required to defend a suit, without more, does not constitute a clear case of hardship or inequity." *Id.* at 1112 (internal quotation omitted).

## DISCUSSION

Sara Lee moves to dismiss the Complaint on three primary grounds. First, it asserts that Brown's claims are expressly preempted by the FDCA and impliedly preempted under *Buckman Co. v. Plaintiffs' Legal Committee*, 531 U.S. 341 (2000). Second, it argues that Brown lacks standing to sue. Finally, it contends that the Complaint fails to state a claim under Fed. R. Civ. P. 12(b)(6) and fails to plead claims grounded in fraud with sufficient particularity under Fed. R. Civ. P. 9(b). Because I agree that Brown's first theory is expressly preempted by the FDCA and she has not demonstrated the requisite reliance for her second theory, I GRANT Sara Lee's motion to dismiss.

### III. EXPRESS PREEMPTION

Sara Lee contends that Brown's challenge to the front-label protein claim is expressly preempted by federal regulation. MTD at 8 ("Plaintiff's attempt to punish conduct [that] FDA

regulations expressly permit is preempted by the Nutrition Labeling and Education Act.").  The

Nutritional Labeling and Education Act, which amended the FDCA, expressly preempts any state-

law requirement for food labeling that is "not identical" to a requirement of the FDCA.  *See* 21

U.S.C. § 343-1(a)(5); *Hawkins v. Kroger Co.*, 906 F.3d 763, 769–770 (9th Cir. 2018).  This means

that if FDA regulations permit the statements that Sara Lee makes on the face of the Products'

packaging, then Brown's state law claims are preempted.  *Hawkins*, 906 F.3d at 770.  But if

Brown alleges that Sara Lee violated FDA regulations, then preemption is not an obstacle.  *See*

*Nacarino v. Kashi Co.*, No. 21-cv-07036-VC, 2022 WL 390815, at *3 (N.D. Cal. Feb. 9, 2022).

Brown asserts two theories why the protein content claim on the front of the Products'

packaging is unlawful under California state law: (1) the claim misleadingly advertises a specific

amount of protein per serving without adjusting for digestibility; and (2) the packaging does not

include the required "percent daily value" of protein content in the Nutrition Facts panel, as

required by FDA regulations.  *See* Compl. ¶ 39; 21 C.F.R. § 101.9(c)(7)(i).  Brown maintains that

both labeling acts are independently unlawful such that either may support her state law claims.

*See* Compl. ¶ 39 (characterizing her digestibility argument as showing that "the front label is also

independently misleading").  I address each of these in turn.

**A.  The FDCA Preempts Brown's Theory that the Protein Claim Is Inherently Misleading**

Brown contends that a front-label protein content claim calculated pursuant to the nitrogen

method is inherently "false or misleading" in violation of section 101.13(i)(3).  From Brown's

perspective, it is misleading to advertise that the product has "10g PLANT-BASED protein" when

only half of the protein is digestible.  Compl. ¶ 7; MTD Opp. at 1.

The problem with Brown's digestibility argument is that the FDA regulations indicate that

protein content claims may be calculated by either the nitrogen method (which does not adjust for

digestibility) or PDCAAS (which does).  Subsection 101.13(o) establishes that "compliance with

requirements for nutrient content claims . . . will be determined using the analytical methodology

prescribed for determining compliance with nutrition labeling in § 101.9," *see* 21 C.F.R.

§ 101.13(o), and both the nitrogen method and PDCAAS are analytical methodologies used to

determine compliance with nutrition labeling in section 101.9.  *See id.* §§ 101.9(c)(7) and

(c)(7)(ii).  And on January 11, 2022, the FDA issued guidance clarifying that protein content

claims may be based on "either of the methods mentioned" in section 101.9(c)(7)—that is, either

the "nitrogen method" or the "protein digestibility-corrected" method.  *See Industry Resources on

the Changes to the Nutrition Facts Label*, U.S. Food & Drug Administration (content current as of

Jan. 11, 2022), https://www.fda.gov/food/food-labeling-nutrition/industry-resources-changes-

nutrition-facts-label.[2]

   In light of § 101.13(o) and the FDA's recent guidance, I join my colleagues who have

recently examined this issue to find that the FDA regulations permit protein content claims to be

calculated via the nitrogen method.  *See Nacarino*, 2022 WL 390815, at *4 ("[T]he FDA has now

clearly stated that its regulations do not require protein content statements to adjust for

digestibility, demonstrating that 'uncorrected' claims are not inherently misleading within the

meaning of the regulation."); *Brown v. Natures Path Foods, Inc.*, No. 21-cv-05132-HSG, 2022

WL 717816, at *7 (N.D. Cal. Mar. 10, 2022) ("[T]he FDA has now made clear that its regulations

do not require protein content claims to adjust for digestibility"); *Chong v. Kind LLC*, No. 21-cv-

04528-RS, 2022 WL 464149, at *3 (N.D. Cal. Feb. 15, 2022) ("[A] correct reading of the

regulations establishes that producers may state grams of protein even outside the Nutrition Facts

panel calculated by the nitrogen method, and without adjustment for digestibility.").  Because

Brown's first challenge to Sara Lee's front-label would use California state law to impose

---

[2] Sara Lee's request for judicial notice of the guidance is granted.  Dkt. No. 21.  Matters of public record, including public information contained on government websites, are judicially noticeable as long as the facts underlying such records are not subject to reasonable dispute.  *See MGIC Indemnity Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986).  I take judicial notice of the FDA's guidance because it is part of the public record.  And even assuming that the guidance does not warrant *Auer* deference, it offers persuasive support for Sara Lee's position.  *See Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944).

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

requirements—adjusting the total protein amount for digestibility—that the FDA does not, her first argument is preempted by the FDCA. 21 U.S.C. § 343-1(a)(5); *see also Mee v. IA Nutrition, Inc.*, No. 14-cv-5006-MMC, 2015 WL 2251303, at *4 (N.D. Cal. May 13, 2015) ("[W]here, as here, an FDA regulation provides that the question of compliance must be determined using the method specified therein, a state law claim that seeks to establish a violation of such regulation by a different methodology is preempted.").

As a result, Sara Lee's motion to dismiss is granted as to those claims. As the defect lies in the legal theory, not the factual allegations, the dismissal is without leave to amend.

### B. Brown's Front-Label Challenge Based on the Percent Daily Value Omission Is Not Expressly Preempted

Brown's second challenge to the front-label protein content claim fares better with regards to preemption. Again, Brown's theory here is that Sara Lee violated state law by making a protein claim on the front label without including the corrected amount of protein per serving (the digestibility-adjusted figure, expressed as a percent of daily value) in the Nutrition Facts panel. Compl. ¶ 70; MTD Opp. at 9. In general, manufacturers do not need to include a digestibility-adjusted figure for protein on the Nutrition Facts panel. 21 C.F.R. § 101.9(c)(7)(i). But if a manufacturer chooses to display a protein claim on a product, then the FDA requires that a statement of the corrected amount of protein per serving be placed on the Nutrition Facts panel. *Id.* ("[S]uch a statement shall be given if a protein claim is made for the product . . . ").

At least at this stage, Brown's theory that the front-label claim is misleading because of the missing information in the Nutrition Facts panel appears plausible.[3] "California courts have held that even technically correct labels can be misleading." *Bruton v. Gerber Prod. Co.*, 703 Fed.

---

[3] As noted above, because Brown advanced her theory that the front-label protein claim is unlawful pursuant to 21 C.F.R. § 101.13(n) for the first time during the hearing, I do not address it here or elsewhere in this opinion.

United States District Court
Northern District of California

App'x 468, 471 (9th Cir. 2017); *see Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 510 (2003) ("The advertisement, although literally true, was nevertheless deceptive and misleading in its implications . . . ") (internal quotation omitted); *see also Leoni v. State Bar*, 39 Cal. 3d 609, 627 (1985) (holding that attorney advertising, though not false, was misleading because "[a] necessary fact ha[d] been omitted").

Brown's argument is not expressly preempted by FDA regulations because it is based on an alleged violation of FDA regulations. *See* 21 C.F.R. § 101.9(c)(7)(i). She does not seek to impose requirements that differ from those in the applicable federal law. *Hawkins*, 906 F.3d at 770; *Brown*, 2022 WL 717816, at *6 n.6 (holding that similar claim arising from omission in Nutrition Facts panel is not expressly preempted). I conclude that this claim is not expressly preempted.

## III.    IMPLIED PREEMPTION UNDER *BUCKMAN*

Sara Lee next argues that Brown's unlawfulness claim is impliedly preempted under *Buckman* because it is based on alleged regulatory violations. MTD at 21 ("Plaintiff's claims are entirely derivative of FDA regulations and therefore fail under *Buckman* preemption."). There is no private right of action to enforce the FDCA or regulations promulgated by the FDA, and even though Brown's state law claims allege a violation of California's Sherman Law, Sara Lee argues that Brown is actually attempting to enforce the FDCA. *Id.* at 19–21.

I disagree that *Buckman* preemption applies to Brown's claims. Preemption is fundamentally a matter of congressional intent, but in analyzing the issue courts must begin "with the assumption that the historic police powers of the States [are] not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *Wyeth v. Levine,* 555 U.S. 555, 565 (2009) (internal citations omitted). "States have traditionally possessed the power to protect their citizens from fraud and deception in the sale of food, and therefore there is a strong presumption against federal preemption in the area of marketing food." *Clancy v. The Bromley*

*Tea Co.*, 308 F.R.D. 564, 573 (N.D. Cal. 2013) (citing *Florida Lime & Avocado Growers v. Paul,* 373 U.S. 132, 144 (1963)).

As noted above, when Congress passed the FDCA and its subsequent amendments creating national uniform nutrition labeling, it expressly preempted state law that was inconsistent with its requirements.  21 U.S.C. § 343–1(a).  But Congress did not attempt to completely preempt state laws regarding the marketing of food products.  It specifically anticipated states enacting their own identical laws.  *See In re Farm Raised Salmon Cases,* 42 Cal. 4th 1077, 1090 (2008) ("Congress clearly stated its intent to allow states to establish their own identical laws . . . .").  State laws are only preempted if they are not "equal to, or substantially identical to, requirements imposed by or under the [FDCA]."  *Medtronic, Inc. v. Lohr,* 518 U.S. 470, 496–97 (1996); *see also McClellan v. I-Flow Corp.*, 776 F.3d 1035, 1040 (9th Cir. 2015) ("*Buckman* . . . left the door open to state-law claims 'parallel' to federal requirements.").  California complied with this requirement in passing the Sherman Law, which expressly adopts the federal labeling requirement.  "All food labeling regulations and any amendments to those regulations adopted pursuant to the federal act . . . shall be the food regulations of this state."  Cal. Health & Safety Code § 110100(a).

In *Buckman*, plaintiffs brought state-law claims that the defendant made fraudulent representations to the FDA, resulting in allegedly improper market clearance for bone screws and harm to patients through their use.  *Buckman v. Plaintiffs' Legal Committee*, 531 U.S. 341, 343 (2001).  The Court held that plaintiffs' claims were impliedly preempted because "fraud-on-the-FDA claims inevitably conflict with the FDA's responsibility to police fraud consistently with the Administration's judgment and objectives."  *Id.* at 350.  Because "[p]olicing fraud against federal agencies is hardly a field which the States have traditionally occupied," the Court found that there was no presumption against preemption.  *Id.* at 347 (internal quotation and citation omitted); *see also McClellan*, 776 F.3d at 1040 (describing *Buckman* and its theory of implied preemption).

*Buckman* preemption does not apply because Brown is not seeking to enforce the FDCA—in her complaint, she expressly disclaimed "any causes of action under the FDCA and regulations promulgated thereunder by the FDA." Compl. at 18. She "relies on the FDCA and FDA regulations only to the extent such laws and regulations have been separately enacted as state law or regulation or provide a predicate basis of liability" under state laws like the Sherman Law, UCL, FAL, and CLRA. *Id.*; *see also* MTD Opp. at 11. In other words, Brown is suing because the protein statements at issue are allegedly misleading under California law, not because the protein statements allegedly violate FDA regulations. Brown's claims thus fit within the "narrow gap" that avoids preemption—she is suing for conduct that *violates* the FDCA, but not *because* the conduct violates the FDCA. *Perez v. Nidek Co.*, 711 F.3d 1109, 1120 (9th Cir. 2013).

I respectfully disagree with *Chong*, which recently found that a similar Sherman Law claim involving the omission of the digestibility-adjusted figure for protein from the Nutrition Facts panel was impliedly preempted under *Buckman*. *Chong*, 2022 WL 464149, at *4 ("[P]laintiffs' claims based on the omission of the % DV in some of KIND's product labels are preempted."). *Chong* read *Buckman* and *Stengel* as requiring plaintiffs to plead "traditional state tort law which had predated the federal enactments in question" to avoid preemption. *Id.* (quoting *Buckman*, 531 U.S. at 353). *Chong* reasoned that because the Sherman Law "post-dates and is entirely dependent on the FDCA," it was preempted by the FDCA. *Id.*

I do not read *Buckman* or its progeny as sweeping so broadly. The "traditional state tort law which had predated the federal enactments" language appears to flow from the Court's discussion of *Silkwood*. *See Buckman*, 531 U.S. at 352 ("*Silkwood* is different from the present case . . . Silkwood's claim was not based on any sort of fraud-on-the-agency theory, but on traditional state tort law principles of the duty of care owed by the producer of plutonium fuel pins to an employee working in its plant."). Neither *Buckman* nor *Stengel* held that state statutory claims must predate the FDCA to avoid preemption; *Chong* cites language from the *Stengel*

14

concurrence to find otherwise. *Chong*, 2022 WL 464149, at *4 (citing *Stengel v. Medronic, Inc.*, 704 F.3d 1224, 1235 (9th Cir. 2013) (Watford, J., concurring) (to avoid preemption, the state-law claim must "predate[ ] the federal enactments in question" and "not exist solely by virtue of those enactments")). *Stengel* actually held that the FDCA "does not preempt a state-law claim for violating a state-law duty that parallels a federal-law duty under the [FDCA]." *Stengel*, 704 F.3d at 1228 (en banc).

In light of the "strong presumption against federal preemption in the area of marketing food," *Clancy*, 308 F.R.D. at 573, I am hesitant to infer implied preemption in this context. Indeed, "courts in this District . . . routinely reject the argument that the Court's reasoning in *Buckman* justifies preemption of food labeling claims under the Sherman Law." *Vassigh v. Bai Brands LLC*, No. 14-cv-05127-HSG, 2015 WL 4238886, at *4 (N.D. Cal. July 13, 2015) (collecting authorities); *see also Samet v. Procter & Gamble Co.*, No. 5:12-cv-01891-PSG, 2013 WL 3124647, at *6 (N.D. Cal. June 18, 2013) (finding that *Buckman* did not impliedly preempt Sherman Law claims); *Brazil v. Dole Food Co.*, 935 F. Supp. 2d 947, 954–58 (N.D. Cal. 2013) (same); *Hendricks v. StarKist Co.*, 30 F. Supp. 3d 917, 929 (N.D. Cal. 2014) (same); *Morgan v. Wallaby Yogurt Co., Inc.*, No. 13-cv-00296-WHO, 2013 WL 5514563, at *6 (N.D. Cal. Oct. 4, 2013) ("[A] number of courts have rejected the contention that state causes of action are end-runs around the FDCA and must be barred."); *Gustavson v. Wrigley Sales Co.*, 961 F. Supp. 2d 1100, 1118 (distinguishing *Buckman* and finding no preemption in part because "the dangers arising out of food mislabeling are [not] even remotely equivalent to the 'unreasonable risk of illness or injury' presented by Class III medical devices") (citation omitted); *Swearingen v. Santa Cruz Nat., Inc.*, No. 13-cv-04291-SI, 2016 WL 4382544, at *7 (N.D. Cal. Aug. 17, 2016) ("The Court thus agrees with the numerous other judges in this district that have found plaintiffs' state law claims regarding mislabeled food are not impliedly preempted by the FDCA.").

For these reasons, I conclude that Brown's claims based on violations of the Sherman Law

15

are not subject to implied preemption.

## IV.   STANDING

Sara Lee raises three standing arguments: (1) Brown lacks Article III standing because she fails to allege that she suffered an injury-in-fact; (2) Brown lacks statutory standing because she failed to plead reliance; and (3) Brown lacks standing to pursue injunctive relief.  MTD at 16–19, 23–24.

### B.  Article III Standing

Under Article III of the United States Constitution, a plaintiff must show "injury in fact" to have standing in federal court.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  A "quintessential injury-in-fact" occurs when the "plaintiffs spent money that, absent defendants' actions, they would not have spent."  *Maya v. Centex Corp.*, 658 F.3d 1060, 1069 (9th Cir. 2011).

Brown has alleged a cognizable injury sufficient to show Article III standing.  She pleaded that she "paid more money for the Products than she would have paid had the product not unlawfully contained a protein claim, or had that protein claim not been misleading regarding the number of grams of protein it provided."  Compl. ¶ 54; *see also id.* ¶ 55 ("Had Defendant not misrepresented . . . the true nature of the Products, Plaintiff would not have purchased them or, at a very minimum, she would have paid less for the Products."); MTD Opp. at 8 (alleging that Plaintiff "paid a price premium for the products because they included an unlawful label claim").  Sara Lee cites *TransUnion* for the proposition that "a bare regulatory violation, untethered to a particularized allegation of harm, does not give rise to an injury-in-fact sufficient for Article III standing."  MTD at 17.  But Brown *has* pleaded a particularized allegation of harm: she alleged that she paid a specific amount of money that she would not have paid but for Sara Lee's front-label protein claim on the Products.  Compl. ¶¶ 54–55.

I conclude that Brown has pleaded sufficient facts to establish Article III standing.

**B.      Statutory Standing**

To establish standing under the FAL, CLRA, or UCL, a plaintiff must also allege that she

relied on the defendant's purported misrepresentations and suffered economic injury as a

result.  *See Kwikset*, 51 Cal. 4th at 326; *Brown*, 2022 WL 717816, at *4; *see also Swearingen*,

2014 WL 1100944, at *3 ("As with the UCL, [p]laintiffs must allege reliance on the specific

marketing materials claimed to be misleading in order to establish standing to bring claims under

the  . . . CLRA.") (internal quotation and citation omitted).  In *Kwikset*, the California Supreme

Court explained that because "reliance is the causal mechanism of fraud," a plaintiff "proceeding

on a claim of misrepresentation as the basis of his or her UCL action must demonstrate actual

reliance on the allegedly deceptive or misleading statements."  51 Cal. 4th at 326 (quotation

omitted).  To satisfy the causation requirement, plaintiffs are required to plead and prove that they

actually relied on the statement at issue.  *See Great Pac. Sec. v. Barclays Capital, Inc.*, 743 Fed.

App'x 780, 783 (9th Cir. 2018) (citing *Kwikset*, 51 Cal. 4th at 326-27).  "[T]his appears true of all

UCL claims, regardless of whether they are brought under the unfair, unlawful, or fraudulent

prong."  *Nacarino v. Chobani, LLC*, No. 20-cv-07437-EMC, 2022 WL 344966, at *6 (N.D. Cal.

Feb. 4, 2022).

Sara Lee challenges Brown's statutory standing for her claims based on the missing protein

digestibility-adjusted figure in the Nutrition Facts panel.  Because the Complaint does not allege

that Brown ever reviewed the Nutrition Facts panels before buying the Products, Sara Lee

contends that Brown has failed to show that she actually relied on the absence of the "percent

daily value" figure to her detriment.  MTD at 19; *Kwikset*, 51 Cal. 4th at 326.

Brown does not dispute that she must show actual reliance.[4]  MTD Opp. at 8 ("Where, as

---

[4] Brown's argument regarding the inapplicability of the reasonable consumer test for reliance misses the point.  MTD Opp. at 8 n.3.  Sara Lee contends that Brown lacks statutory standing because Brown failed to show that *she* actually

here, the unlawful conduct is labeling, the Plaintiff must allege she actually read and relied on the unlawful labeling claim when purchasing the product.").  Nor does she contend that she pleaded facts showing that she read and relied upon the Nutrition Facts panels.  Instead, Brown argues that "the labeling statement at issue in this case is the front label protein claim," and that Sara Lee's failure to provide the digestibility-adjusted protein figure in the Nutrition Facts panel is what makes the front-label claim unlawful.

I agree with Sara Lee that Brown has a reliance problem.  I have already found that the protein claim on the front-label is plausibly misleading *because* Sara Lee failed to include the required protein digestibility-adjusted figure on the Nutrition Facts label.  The Nutrition Facts omission is thus a critical part of Brown's legal theory.  But Brown has not pleaded any facts that would show that she looked at the Nutrition Facts label during the process of purchasing the Products.  Nor has she shown that the omission of the digestibility-adjusted sum contributed to her decision to purchase the Products.  Without making some sort of showing on this ground, I cannot reasonably infer that her purchasing decision was influenced by the missing information on the Nutrition Facts panel.  *See Brown*, 2022 WL 717816, at *4 (dismissing similar claim with leave to amend where "[w]hat is missing are facts allowing the Court to reasonably infer that Plaintiffs made their purchasing decisions based on anything other than the Products' front labels"); *Pardini v. Unilever United States, Inc.*, 961 F. Supp. 2d 1048, 1060 (N.D. Cal. 2013) ("Plaintiff has not pled that she ever looked at the nutrition panel.  As such, it is implausible that she was deceived by its lack of disclosures.").

Because Brown has failed to plausibly allege that she was deceived by the omission of digestibility-adjusted protein figure from the Nutrition Facts panels, I DISMISS her claims based

---

read and relied upon the allegedly misleading labels.  MTD at 18–19.  Sara Lee correctly frames the issue as *Brown's* actual reliance, not a reasonable consumer test of reliance.

upon this theory with leave to amend so that she may allege whether she saw and relied upon the Nutrition Facts labels for the Products at issue.

## C.      Standing for Injunctive Relief

Sara Lee asserts that Brown lacks standing to seek injunctive relief because she failed to show a risk of future harm.  MTD at 23–24.

To have standing to seek injunctive relief under Article III, a plaintiff must "demonstrate a real and immediate threat of repeated injury in the future."  *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 946 (9th Cir. 2011) (quotation omitted).  Once a plaintiff has been wronged, she is entitled to injunctive relief only if she can show that she faces a "real or immediate threat that [she] will again be wronged in a similar way." *Mayfield v. United States*, 599 F.3d 964, 970 (9th Cir. 2010) (citations and internal punctuation omitted).

"In the context of false advertising cases, the Ninth Circuit has explained that a plaintiff may establish the risk of future harm in two ways: (1) the consumer's plausible allegations that they will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although they would like to; or (2) the consumer's plausible allegations that they might purchase the product in the future, despite the fact it was once marred by false labeling because they may reasonably, but incorrectly, assume the product was improved."  *Brown*, 2022 WL 717816, at *5 (citing *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 969–70 (9th Cir. 2018)).

Brown has satisfied *Davidson*'s requirements.  She pleaded that she: (1) continues to desire to purchase Sara Lee's products; (2) would likely purchase the products again in the future if they were reformulated to contain the amount of protein represented on the labels; and (3) regularly visits stores where Sara Lee's products are sold.  Compl. ¶ 56.  Brown also alleged that, absent an injunction prohibiting Sara Lee from mislabeling, she will be "unable to rely on Defendant's labels when shopping for protein products in the future." *Id.*  With these allegations, Brown has

plausibly pleaded a threat of future harm by alleging that she will be unable to rely on the Products' advertising or labeling in the future, and so will not purchase the Products although she would like to. *See Davidson*, 889 F.3d at 969–70.

Sara Lee argues that Brown lacks standing because Brown alleges that "[i]f the products were reformulated to provide the grams of protein that are represented on the labels, Plaintiff would likely purchase them again in the future." Compl. ¶ 56. Sara Lee characterizes this allegation as showing that Brown "would only buy the products in the future if the products were 'reformulated' to contain different ingredients than their current iteration." MTD at 23. Sara Lee is correct that such an allegation would be insufficient for injunctive relief because I will not issue a mandatory injunction requiring Sara Lee to add more protein to its products. *See Dailey v. A&W Concentrate Co.*, 519 F. Supp. 3d 668, 672 (N.D. Cal. 2021) ("Dailey's allegation that he would purchase the products again if they 'were reformulated such that the vanilla flavor came exclusively from the vanilla plant' is not sufficient to allege standing for injunctive relief."); *see also Brown*, 2022 WL 717816, at *6 ("Obviously, the Court will not issue a mandatory injunction forcing Nature's Path to create new products with more protein."); *Prescott v. Nestle USA, Inc.*, No. 19-cv-07471-BLF, 2020 WL 3035798, at *6 (N.D. Cal. June 4, 2020) (dismissing claim for injunctive relief where "Plaintiffs have not alleged that they would purchase the Product absent the alleged misleading labeling" and instead "[made] clear that they do not wish to purchase 'fake' white chocolate").

But "reformulated" may mean that the Products are relabeled, not that the ingredient composition is altered. In this light, Brown's allegation satisfies *Davidson*'s first example of future harm. Because I can fairly interpret the complaint as alleging that Brown would purchase the products again in the future if they were not misleadingly labeled, Brown has sufficiently alleged standing to seek injunctive relief. *See Brown*, 2022 WL 717816, at *6 (finding standing for injunctive relief with similar allegations); *Dailey*, 519 F. Supp. 3d at 671 ("[H]e has

sufficiently alleged standing to seek injunctive relief by alleging that he would purchase the products again in the future if they were not deceptively labeled."); *Nacarino v. Chobani, LLC*, 2022 WL 344966, at \*11 (standing for injunctive relief exists where plaintiff alleged that "she cannot rely on the Product's advertising or labeling, and that she will not purchase the Product again despite her desire to").

I therefore find that Brown has standing to seek injunctive relief.

## V.       RULE 9 PARTICULARITY

Sara Lee contends that Brown's common law fraud claim must also be dismissed because she fails to meet the particularity required under Rule 9.[5]   MTD at 21–22.  I agree.

Rule 9(b) requires a complaint must allege the "who, what, when, where, and how" of the misrepresentations.  *Vess*, 317 F.3d at 1106.   Brown's complaint satisfies most of these requirements: she alleges that Sara Lee (who) misrepresented the amount of protein in its products (what) to consumers when they purchased the Products (when and where).  Brown stumbles on the "how," though: her legal theory is that the front-label total protein claim is deceptive because the protein digestibility-adjusted figure is not included in the Nutrition Facts panel, but—as discussed above—Brown has not pleaded facts showing that she looked at the Nutrition Facts panel.

Sara Lee is thus correct that a critical piece of Brown's claim is missing.  Common law fraud claims "require that the defendant knew of the material fact and either misrepresented or concealed that fact to induce reliance by the plaintiff."  *Tomek v. Apple Inc.*, 636 Fed. App'x 712, 713 (9th Cir. 2016) (dismissing claim for failing to plead fraud with requisite particularity).  To

---

[5] In her opposition, Brown appears to misconstrue Sara Lee's argument regarding Brown's common law fraud, deceit and/or misrepresentation claim (Brown's fourth cause of action).  Sara Lee specifically argues that Brown's *common law fraud claim* fails for lack of reliance.  MTD at 21–22 ("Plaintiff bears a two-part burden with respect to her common law fraud claim" and "Plaintiff fails to state a common law fraud claim because a critical piece of her claim is missing: Plaintiff has not shown she justifiably relied on the alleged misrepresentation.").  Brown responds that her "UCL claim is not so limited."  MTD Opp. at 23.  Brown's UCL claim is separate and distinct from her common law fraud claim, and Brown's arguments regarding what she is required to show for her UCL claim do not bear on the common law fraud pleading issue.

United States District Court
Northern District of California

satisfy Rule 9(b)'s "how" requirement, then, Brown must plead facts showing that she saw and relied on the alleged misrepresentations in deciding to purchase the Products. *See Delacruz v. Cytosport, Inc.*, No. 11-cv-3532-CW, 2012 WL 2563857, at *9 (N.D. Cal. June 28, 2012) (finding reliance where plaintiff pleaded that "she 'saw and relied' on the alleged misrepresentations on the website in deciding to purchase the products"); *cf. Ahern v. Apple Inc.*, 411 F. Supp. 3d 541, 564 (N.D. Cal. 2019) (granting motion to dismiss fraud claim where "Plaintiffs have not specified which statements any of them saw or relied on in deciding to buy the [Apple computers]") (internal quotation and citation omitted).

Because Brown has not shown that she saw and relied upon the missing digestibility-adjusted protein figure from the Nutrition Facts panel, she has failed to state a common law fraud claim.  I GRANT Sara Lee's motion to dismiss on this ground but with leave to amend.

## VI.    PLAINTIFF'S EQUITABLE MONETARY RELIEF CLAIMS

Finally, Sara Lee argues that Brown's claims for equitable monetary relief fail because Brown does not allege that she lacks an adequate remedy at law.  MTD at 22.  Sara Lee raises two interconnected issues: (1) Brown's equitable relief claims are "entirely duplicative" of her request for compensatory relief under CLRA, and (2) Brown has pleaded equitable restitution "in the alternative" to damages.  *Id.* at 23; MTD Reply [Dkt. 26] at 14.

In *Sonner*, the Ninth Circuit held that "a federal court must apply traditional equitable principles before awarding restitution under the UCL and CLRA."  *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 841 (9th Cir. 2020).  One "basic doctrine of equity jurisprudence [is] that courts of equity should not act when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief."  *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 381 (1992) (internal quotation marks, alteration, and citations omitted).  Accordingly, *Sonner* held that a federal plaintiff must "establish that she lacks an adequate remedy at law before securing equitable restitution for past harm under the UCL and CLRA."  *Sonner*, 971

F.3d at 844.

Courts throughout the Ninth Circuit and within this District have reached different and often shifting views on what *Sonner* requires from a plaintiff as a matter of pleading.  *See Jeong v. Nexo Fin. LLC*, No. 21-cv-02392-BLF, 2022 WL 174236, at *27 (N.D. Cal. Jan. 19, 2022) (noting intra-circuit split regarding whether pleading an equitable restitution claim in the alternative is appropriate at the pleading stage).  I have consistently concluded that, at the pleading stage, *Sonner* only requires a plaintiff to plead that inadequate remedies at law exist to pursue equitable claims past the pleading stage.  That is not an onerous burden.  *See, e.g.*, *Johnson v. Trumpet Behav. Health, LLC*, No. 3:21-cv-03221-WHO, 2022 WL 74163, at *3 (N.D. Cal. Jan. 7, 2022) (rejecting argument that *Sonner* imposed any more onerous requirement, for example, to plead specific facts showing that legal remedies would be inadequate).

Once the plaintiff has met her burden to plead the inadequacy of legal remedies, it will typically make sense to defer the determination of whether—on the particular facts of a particular case and in light of how the evidence develops—a plaintiff's legal remedies will ultimately be adequate.  It will suffice at the pleading stage for plaintiff to plead that her legal remedies are inadequate or plead equitable claims in the alternative because her legal remedies are inadequate.

In the Complaint, Brown seeks two forms of equitable monetary relief: restitution under the UCL and FAL and unjust enrichment.  Compl. ¶¶ 78, 99, 115.  Sara Lee points out that this equitable relief is "entirely duplicative" of Brown's request for compensatory relief under the CLRA.  MTD at 23.  Brown pleaded that she sought restitution "only hypothetically and as an alternative to any contrary allegation in [her] other causes of action, in the event that such causes of action do not succeed."  *Id.* ¶ 78, 99.  Brown's request for restitution under the UCL and FAL and unjust enrichment as remedies in the alternative to legal remedies under CLRA is sufficient and permissible at the pleading stage.  The issue of Brown's entitlement to seek these equitable remedies may be revisited at a later stage.

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## VII.    MOTION TO STAY

Sara Lee seeks to stay all proceedings in this case pending the Ninth Circuit's resolution of *Chong*, a similar case that challenged the food labeling practices of Kind LLC ("Kind"), where the district court dismissed all claims.  *See* Motion to Stay [Dkt. 22] at 3.

Sara Lee argues that the plaintiff in *Chong* brought claims based on similar legal theories: that Kind misled consumers by stating the total protein content on the front of their products, unadjusted for digestibility, and that Kind violated FDA regulations by failing to include a digestibility-adjusted sum in the Nutrition Facts panel.  *Id.*  The *Chong* court found that the first theory was expressly preempted and the second theory was impliedly preempted under *Buckman*.  *Id.* at 4; *see also Chong*, 2022 WL 464149, at *3–4.  Because of the court's preemption analysis, *Chong* did not address whether a front-label protein statement could be misleading because of information omitted from the Nutrition Facts panel.

In support of its motion to stay, Sara Lee contends that all of the *Landis* factors favor a stay because Brown will not be prejudiced, both parties will suffer hardship and inequity if required to proceed before *Chong* is decided, and *Chong* and the instant case "turn on substantially similar issues."  *Id.* at 6–7.  Brown opposes the stay, pointing out that the *Chong* appeal was filed "barely over one month ago" and that "the median time from notice of appeal to decision in the Ninth Circuit is just shy of three years."  *See* Opposition to Motion to Stay [Dkt. 24] at 5.  Brown also argues that her "primary claim in this case"—that the front-label is "unlawful" because of the missing information in the Nutrition Facts panel—was not addressed by *Chong*.  *Id.* at 3.  Finally, Brown contends that she would be prejudiced because she is seeking injunctive relief and granting a stay would "allow Defendant unhindered ability to continue its unlawful business practices for years."  *Id.* at 9.

This case does not present the "rare circumstances" where a stay based on an appeal in a separate case is warranted.  *Landis*, 299 U.S. at 255.  Brown is correct that a party seeking

injunctive relief in response to ongoing harm is more likely to be harmed by a stay. *Lockyer*, 398 F.3d at 1112. Because Brown identified prejudice that would result from a stay, Sara Lee was required to "make out a clear case of hardship or inequity in being required to go forward." *Id.* (internal quotation omitted). Sara Lee has not met this burden because "being required to defend a suit, without more, does not constitute a clear case of hardship or inequity." *Id.* at 1112 (internal quotation omitted). And while the Ninth Circuit's decision in *Chong* may ultimately change my express and implied preemption analyses in this case, I find that the possible gain in judicial efficiency is outweighed by the prejudice to Brown.

In consideration of the case law and the competing interests at issue, I find that my discretion is best exercised to DENY Sara Lee's request for a stay at this time.

## CONCLUSION

For the foregoing reasons, Sara Lee's motion to dismiss is GRANTED and its motion to stay is DENIED.

Brown's claims are preempted to the extent that she argues that the front-label protein claim is inherently misleading because it is not adjusted for digestibility. Any claims based upon this theory are DISMISSED without leave to amend.

Brown's claims are not preempted to the extent that she argues the front-label protein claim is misleading because of the omitted digestibility-adjusted protein figure in the Nutrition Facts panel. Her claims for violation of the UCL, violation of the CLRA, false advertising, common law fraud, and unjust enrichment that are premised on this second theory are DISMISSED with leave to amend.

Brown is also granted leave to plead a theory of unlawfulness based on Sara Lee's alleged violation of 21 C.F.R. § 101.13(n). Brown shall amend her complaint within 30 days of the filing

of this Order.

**IT IS SO ORDERED.**

Dated: May 10, 2022

_____
William H. Orrick
United States District Judge