**GUTRIDE SAFIER LLP**
Seth A. Safier (State Bar No. 197427)
seth@gutridesafier.com
Marie A. McCrary (State Bar No. 262670)
marie@gutridesafier.com
Hayley Reynolds (State Bar No. 306427)
hayley@gutridesafier.com
Kali Backer (State Bar No. 342492)
kali@gutridesafier.com
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 639-9090
Facsimile: (415) 449-6469

Matthew T. McCrary (admitted *pro hac vice*)
matt@gutridesafier.com
4450 Arapahoe Ave., Suite 100
Boulder, CO 80303
Telephone: (415) 639-9090

*Attorneys for Plaintiff*
*Molly Brown*

UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF CALIFORNIA

MOLLY BROWN, individually, and on
behalf of the general public and those
similarly situated,

                                Plaintiff,

          v.

VAN'S INTERNATIONAL FOODS, INC.

                                Defendant.

CASE NO. 3:22-cv-00001-WHO

**PLAINTIFF'S OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS
THE FIRST AMENDED COMPLAINT**

Hearing Date: August 24, 2022
Hearing Time: 2 p.m. PT
Courtroom: Courtroom 2 (17th Floor)
Judge: Hon. William H. Orrick

1

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ................................................................................1

II.   BACKGROUND .................................................................................2

    A.    Procedural History. ................................................................2

    B.    The FAC adds substantial reliance allegations. .........................4

III.  ARGUMENT ....................................................................................5

    A.    Plaintiff Alleges a New Claim Under the Unlawful Prong of the UCL. .....5

    B.    Plaintiffs Allege Reliance on Each of Defendant's Unlawful and/or Misleading Statements or Omissions. .........................................6

        1.    Plaintiff adequately alleged reliance on the front label. .................7

        2.    Plaintiff adequately alleges reliance on the NFP. ...........................8

            i.    Sarah Lee's contention that the reliance allegations fail is one of splitting hairs. ........................................................10

            ii.    Sarah Lee's argument that reliance is implausible lacks merit. .............................................................................12

            iii.    Sarah Lee's argument as to the timing of the reliance is wrong and misguided. .......................................................13

            iv.    Plaintiff adequately pleads that her reliance was reasonable. ........................................................................15

    C.    Plaintiff's Reliance Allegations Suffice for Her Common Law Fraud and Unjust Enrichment Claims as Well as F.R.C.P. 9(b). ................19

    D.    Plaintiff Should Be Granted Leave to Amend if Necessary. ...................20

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## TABLE OF AUTHORITIES

**CASES**

*Andino v. Apple, Inc.*, 2021 U.S. Dist. LEXIS 76011 (E.D. Cal. Apr. 19, 2021) ..................... 22

*Baranco v. Ford Motor Co.*, 294 F. Supp. 3d 950 (N.D. Cal. 2018) ............................ 9

*Bruton v. Gerber Prods. Co.*, 2017 U.S. App. LEXIS 12833 (9th Cir. July 17, 2017)............. 17

*Contratto v. Ethicon, Inc.*, 227 F.R.D. 304 (N.D. Cal. 2005) .................................. 7

*Cullen v. Netflix, Inc.*, 2013 WL 140103 (N.D. Cal. Jan. 10, 2013) ........................... 16

*Daniel v. Ford Motor Co.*, 806 F.3d 1217 (9th Cir. 2015).......................................... 9

*DeSoto v. Yellow Freight Sys.*, 957 F.2d 655 (9th Cir. 1992) ................................... 22

*Durell v. Sharp Healthcare*, 183 Cal. App.  4th 1350 (2010) ..................................... 13

*Golden v. Home Depot U.S.A., Inc.*, No. 1:18-cv-00033-, 2020 U.S. Dist. LEXIS 89941 (E.D. Cal. May 20, 2020) ................................................................. 16

*Gonzalez v. Arizona*, 1106 677 F.3d 383 (9th Cir. 2012).......................................... 3

*Grammens v. Bankers Standard Ins. Co.*, 2022 U.S. Dist. LEXIS 21705 (N.D. Cal. Feb. 7, 2022)................................................................................ 7

*Guttmann v. La Tapatia Tortilleria, Inc.*, No. 15-cv-02042-SI, 2015 U.S. Dist. LEXIS 156800 (N.D. Cal. Nov. 18, 2015) ............................................... 20, 21

*Ham v. Hain Celestial Grp., Inc.*, 70 F. Supp. 3d 1188 (N.D. Cal. 2014) ................................ 17

*In re iPhone Application Litig.*, 6 F. Supp 3d 1004 (N.D. Cal. 2013) ....................... 13

*In re Juul Labs, Inc., Mktg., Sales Practices, & Prods. Liab. Litig.*, 497 F. Supp. 3d 552 (N.D. Cal. 2020) .................................................................. 11

*Klein v. Chevron U.S.A., Inc.*, 137 Cal. Rptr. 3d 293 (Cal. Ct. App. 2012) ............................... 5

*Madani v. Volkswagen Grp. of Am., Inc.*, No. 17-cv-07287-HSG, 2019 U.S. Dist. LEXIS 133926 (N.D. Cal. Aug. 8, 2019) ............................................ 12

*Morgan v. Wallaby Yogurt Co.*, 2013 U.S. Dist. LEXIS 144959 (N.D. Cal. Oct. 4, 2013)........ 5

*Nacarino v. Chobani, LLC*, 2022 U.S. Dist. LEXIS 20671 (N.D. Cal. Feb. 4, 2022) ............... 7

*O'Shea v. Epson Am., Inc.*, 566 F. App'x 605 (9th Cir. 2014)................................... 12

*Peviani v. Hostess Brands, Inc.*, 750 F. Supp. 2d 1111 (C.D. Cal. 2010)................................ 21

*Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979 (9th Cir. 2015)................................ 8

*Reid v. Johnson & Johnson*, 780 F.3d 952 (9th Cir. 2015) ........................................ 6

*Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393 (9th Cir. 1986).................. 22

*Silver v. BA Sports Nutrition, LLC*, 2022 U.S. Dist. LEXIS 78302 (N.D. Cal. Apr. 29, 2022) ............................................................................................................................ 7

Swearingen v. Amazon Pres. Partners, Inc., 2014 U.S. Dist. LEXIS 36830 (N.D. Cal. Mar. 18, 2014) .............................................................................................. 7, 9, 17

*Williams v. Gerber Products Co.*, 552 F.3d 934 (9th Cir. 2008) ................................ 17

*Wolfe v. Strankman*, 392 F.3d 358 (9th Cir. 2004) ...................................................... 20

*Zeiger v. WellPet LLC*, 526 F. Supp. 3d 652 (N.D. Cal. 2021) ..................................... 2

**REGULATIONS**

21 C.F.R. § 101.13(i)(3) ................................................................................................. 2

21 C.F.R. § 101.13(n) ................................................................................................. 1, 5

58 Fed. Reg. 2302 ...................................................................................................... 1, 6

58 Fed. Reg. 23310 .................................................................................................... 1, 6

I.      **INTRODUCTION**

Defendant Van's International Foods, Inc.'s ("Sarah Lee") Motion to Dismiss focuses almost exclusively on the deception aspect of this case, which flows from the claims asserted under the fraudulent prong of the UCL and other fraud-based claims. The Motion to Dismiss largely ignores Plaintiff's new claim asserted under the UCL's unlawful prong, which, after Plaintiff's amendment, is the primary claim in this case.

This new UCL claim alleges that it was unlawful for Sarah Lee to ever make any front label protein claim. This stems from § 101.13(n), which provides that "[n]utrition labeling in accordance with § 101.9…***shall be provided for any food for which a nutrient content claim is made***" and § 101.13(b), which states that "a nutrient content claim[] ***may not be made on the label***…unless the claim is made in accordance with this regulation [i.e., § 101.13]…". The FDA has explicitly stated that the purpose of these provisions is to ensure that a manufacturer can only make "a nutrient content claim . . . on the label or in labeling of a food, ***provided*** that the food bears nutrition labeling that complies with the requirements in proposed § 101.9." 58 Fed. Reg. 2302, 23310 (emphasis added). Sarah Lee never complied with § 101.9's protein labeling requirements for any of the Products at issue. Thus, its protein nutrient content claims were always unlawful. Period. Sarah Lee does not dispute Plaintiff's interpretation of these regulations, or the fact that it never complied with § 101.9 as to protein. It also concedes that Plaintiff relied on the unlawful front label claim when purchasing the products. Accordingly, this claim must proceed.

Sarah Lee's only argument as to this ***unlawfulness*** claim is an attempt to equate it to Plaintiff's prior claim that the front label was ***misleading*** due to the omission of protein quality disclosures in the nutrition facts panel ("NFP"). As a result, it argues that "the Court has already determined" that Plaintiff must allege reliance on the NFP to have standing to pursue this claim. ECF 40 at 11. In fact, the Court explicitly stated in its prior ruling that it was not addressing the § 101.13(n) claim, and Sarah Lee fails to recognize that the standing analysis with respect to the two claims is different. Substantively, for the deception claim, the front label is misleading by omission ***only if*** the disclosure of the omitted information in the NFP would have changed Plaintiff's behavior. By contrast, the front label claim is unlawful ***regardless*** of whether the

Plaintiff ever even looked at the NFP because the FDA's regulations strictly prohibited it. Plaintiff has standing to sue because she relied on the unlawful front label when purchasing the product (i.e., she bought the product because it made the claim) and she paid a price premium as a result (loss of money). That is a complete unlawfulness claim. So, although Plaintiff must allege reliance to have UCL standing under both her unlawfulness claim and her deception by omission claim, the ***type*** of reliance each claim requires is different because the mechanism of harm is different.

Regardless, Plaintiff has more than adequately alleged reliance on the NFP. In the ***omission*** context, all that a Plaintiff need allege is that she (1) would have noticed the information had it not been omitted, and (2) would have behaved differently as a result. *See Zeiger v. WellPet LLC*, 526 F. Supp. 3d 652, 685 (N.D. Cal. 2021) (Orrick, J.). Plaintiff plainly alleges that she "looked at and read the [Nutrition Facts Panel]" prior to making her purchases, including the "%DV column for protein." FAC ¶ 57. She also alleges that she "would not have purchased the Products or would have, at minimum, paid less for them,"—i.e., changed her behavior—"had Defendant adequately disclosed the corrected amount of protein per serving for each Product expressed as a %DV [in the NFP], as FDA regulations require." *Id.* This suffices to establish reliance. Moreover, as discussed more fully below, Sarah Lee's arguments to the contrary either ignore the totality of the new allegations, ignore the appropriate standard for reviewing this motion, engage in excessive hair-splitting and nitpicking, misapply the law, or some combination of all of the above. The Court should deny Sarah Lee's Motion in full.

## II.     BACKGROUND

### A.     Procedural History.

The initial Complaint alleged two claims based on the front label protein representation. The first claim alleged that the front label protein claims were misleading in violation of § 101.13(i)(3) because they were based on nitrogen testing, rather than the Protein Digestibility Corrected Amino Acid Score ("PDCAAS"). The Court determined that this particular claim was preempted because FDA's "regulations do not require protein content claims to adjust for digestibility or to be calculated using amino acid content testing." ECF 50 at 10 (the "Order"). Although Plaintiff disagrees that such front label claims are expressly preempted, the Court's

ruling is now the law of the case, and, as a result, the claim does not appear in the FAC. *See e.g.*, *Gonzalez v. Arizona*, 1106 677 F.3d 383, 390 n.4 (9th Cir. 2012).

The second claim alleged that the front label protein representation was misleading because Sarah Lee omitted the %DV in the NFP. The Court held that "the front-label is plausibly misleading *because* Sara Lee failed to include the required protein digestibility-adjusted figure on the Nutrition Facts label." ECF 32 at 18. However, the Court dismissed the claim because Plaintiff had "not pleaded any facts that would show that she looked at the Nutrition Facts label during the process of purchasing the Products" or that "her purchasing decision was influenced by the missing information on the Nutrition Facts panel." *Id.* As a result, Plaintiff had not adequately alleged "that she was deceived by the omission." *Id.* Accordingly, the Court granted leave to amend "so that she may allege whether she saw and relied upon the Nutrition Facts labels for the Products at issue." *Id.* at 19. Plaintiff has done so.[1]

At oral argument, Plaintiff's counsel raised a third theory as to the front label protein claim. Counsel argued that it was unlawful because §§ 101.13(n) and (b)— regulations that specifically relate to front label nutrient content claims—condition the ability to make a front label claim on compliance with § 101.9. Counsel argued that because Sarah Lee violated § 101.9(c)(7)(i)-(ii) by failing to state the "corrected amount" of protein as expressed as %DV in the NFP, it was not permitted to make a front label claim at all, thereby making the front label claim unlawful *per se*. The Court stated that this new theory "appears plausible" but expressly declined to rule on any aspect of it since it was first raised at oral argument. Order at 2. Nevertheless, the Court invited Plaintiff to include allegations in her amended complaint regarding this theory. *Id.* at 2, 25. Plaintiff has also now done so.

---

[1] Plaintiff argued in her previous opposition that the omission was also unlawful because it violated § 101.9(c)(7)(i). The Court appears to have collapsed this theory into the misleading by omission claim. *See* ECF 32 at 1-2 ("Brown next argues that such a protein claim is unlawful where the digestibility-adjusted total is omitted from the Nutrition Facts panel. To the extent that Brown is arguing that the front-label protein claim is misleading *because of* the missing digestibility-adjusted figure in the Nutrition Facts panel, Brown lacks standing because she fails to show that she relied upon the omitted information."). The remainder of the Court's analysis was framed solely in terms of deception, misleading by omission and misrepresentation, not that the claim was, as she now alleges, unlawful *per se*. *E.g.*, *id.* at 11, 14, 18, 21, 25.

**B.     The FAC adds substantial reliance allegations.**

The FAC includes robust allegations as to Plaintiffs' reliance on each of the applicable claims at issue in the case: (1) the front label protein claim, and (2) the omission of the %DV in the NFP. *See* FAC ¶¶ 56-58.

Plaintiff made her purchases after reading and relying on the front label protein claims. *Id.* at ¶ 56. Plaintiff "believed the truth of each representation, i.e., that the product would actually provide [] the specific amount of protein claimed on the front labels in a form [the] body could use." *Id.* Plaintiff alleges she would "would not have been drawn to the Products and would not have purchased them" "[h]ad Defendant complied with the law and not made the protein claims on the front of its packages." *Id.*

Plaintiff also alleges that she "looked at and read the NFP on the Products before purchasing them for the first time." *Id.* at ¶ 57. She further alleges that she would have seen a %DV had Sarah Lee disclosed it because "[s]he examines the %DV column for protein when manufacturers provide that information", and that she would have changed her behavior as a result by not buying the product, paying less for it, or purchasing a competitor product with a higher %DV. *Id.* at ¶¶ 57-8. Moreover, she alleges that she "regularly checks the NFP before purchasing any product and uses that as a basis for buying and/or comparing similar products." *Id.* The FAC also alleges how the %DV, specifically, is material to her. *Id.* She is a vegan and she has a vegetarian child, which means "protein is very important to her and her family," as is ensuring that "they all receive their daily recommended protein." *Id.* Plaintiff alleges that when a manufacturer provides the %DV, she "will always choose the product that provides more of the recommended daily value of protein (i.e., has a higher %DV for protein). *Id.* When it is not provided, Plaintiff "can only go off of the stated grams of protein" and "assumes that all [the] disclosed grams are in a form her body can use as protein." *Id.*

The FAC also discusses the Van's Protein Original Waffles specifically. Plaintiff was "looking for a product that would provide her 10 grams of useable protein per serving." *Id.* ¶ 58. Plaintiff would not have bought the Van's Protein Original Waffles or would have paid less for it "[h]ad she seen that the product provided only 10% (or less) of the daily value of protein." *Id.*

1    Plaintiff also would have used the %DV to comparison shop and cross-reference the waffles with

2    other products in order to select the product with the higher %DV. *Id*. Due to the absence of

3    the %DV, the product labeling led Plaintiff to believe the waffles consisted of high quality

4    proteins and that she would receive all of the advertised protein in a form her body could use. *Id*.

5    **III.    ARGUMENT**

6           **A.    Plaintiff Alleges a New Claim Under the Unlawful Prong of the UCL.**

7           Section 17200's "unlawful" prong "borrows violations of other laws and makes those

8    unlawful practices actionable under the UCL." *Klein v. Chevron U.S.A., Inc.*, 137 Cal. Rptr. 3d

9    293, 326–27 (Cal. Ct. App. 2012) (internal quotation marks and ellipsis omitted). "Virtually any

10   law or regulation—federal or state, statutory or common law—can serve as a predicate for a

11   section 17200 'unlawful' violation." *Id*. (internal quotation marks and ellipsis omitted); *see also*

12   *Friedman v. AARP, Inc*., 855 F.3d 1047, 1052 (9th Cir. 2017) (same). This includes, as here,

13   violations of California's Sherman Law. *See Morgan v. Wallaby Yogurt Co.*, 2013 U.S. Dist.

14   LEXIS 144959 *28–30 (N.D. Cal. Oct. 4, 2013) (Orrick, J.) (allowing UCL unlawfulness claims

15   based on predicate violations of the Sherman Law to proceed).

16          The FAC asserts a new claim that Sarah Lee's front label protein claims are unlawful

17   because they violate §§ 101.13(n) and (b). FAC ¶¶ 5-6, 34-36. Section 101.13(n) states that

18   "[n]utrition labeling in accordance with § 101.9, § 101.10, or § 101.36, as applicable, ***shall*** be

19   provided for any food for which a nutrient content claim is made" (emphasis added). Section

20   101.13(b), in turn, explicitly states that "a nutrient content claim[] ***may not be made on the label***

21   or in labeling of foods unless the claim is made in accordance" with all of § 101.13, which

22   necessarily includes § 101.13(n), and, thus, by extension, § 101.9(c)(7)(i). In other words, these

23   regulations make the ability to put a nutrient content claim on the ***front label*** contingent upon

24   compliance with § 101.9 and confirm that Sarah Lee could not put protein claims on the front

25   labels of its products since it did not state the "corrected amount of protein" in the NFP, expressed

26   as a %DV, in compliance with § 101.9(c)(7)(i).

27          The FDA cemented this interpretation in official policy, stating that the agency enacted

28   § 101.13(n) to ensure "that a nutrient content claim may be used on the label or in labeling of a

food, **_provided_** that the food bears nutrition labeling that complies with the requirements of § 101.9." (emphasis added). 58 Fed. Reg. 2302, 23310. This reflects the FDA's historic emphasis on the importance of the holistic NFP, and its skepticism of isolated nutrient content claims. *See Reid v. Johnson & Johnson*, 780 F.3d 952, 959 (9th Cir. 2015) ("Under the FDA regulations, the general rule is that 'nutrient content claims' are not permitted on food labels."). And the implication of the regulatory scheme is that manufacturers cannot reap the benefits of advertising their products with nutrient content claims if the products do not include all the required information in the NFP. *See* 56 Fed. Reg. 60366 (Nov. 27, 1991) (voluntary declaration of nutrients "is viewed by the agency as an effort to market the food as a significant source of nutrients"); 58 Fed. Reg. 2302, 23310 ("Nutrition labeling is necessary when a [nutrient content] claim is made to ensure that other important nutritional aspects of the food are presented along with that aspect highlighted by the claim.").

Sarah Lee does not dispute Plaintiff's interpretation of the regulations or the unlawfulness of its conduct with respect to this claim. Presumably because it cannot do so, and, regardless, is barred from doing so for the first time in its reply brief. *See Silver v. BA Sports Nutrition, LLC*, 2022 U.S. Dist. LEXIS 78302, at *20 n.8 (N.D. Cal. Apr. 29, 2022) ("To the extent defendant raises new arguments in the reply brief [], the Court finds that this is improper and does not consider them"); *Grammens v. Bankers Standard Ins. Co.*, 2022 U.S. Dist. LEXIS 21705, at *11 (N.D. Cal. Feb. 7, 2022), citing *Contratto v. Ethicon, Inc.*, 227 F.R.D. 304, 309 n.5 (N.D. Cal. 2005) ("New arguments in reply—which this functionally is—are improper, so I decline to address it now."). Sarah Lee's front label claims are unlawful due to its noncompliance with §§ 101.13(n) and (b), and this claim tracks both the language and intent behind the regulations. Accordingly, this claim must be allowed to proceed.

### B.    Plaintiffs Allege Reliance on Each of Defendant's Unlawful and/or Misleading Statements or Omissions.

A Plaintiff has standing to sue under the UCL where she "has suffered injury in fact and has lost money or property as a result of the unfair competition." Cal. Bus. & Prof. Code § 17204. When the basis of the claim is a labeling statement, the "as a result of" language means that the Plaintiff is required to plead she "actually relied on the statement at issue" regardless of whether

the label is deceptive, unlawful, or unfair. *Nacarino v. Chobani, LLC*, 2022 U.S. Dist. LEXIS 20671, at *19 (N.D. Cal. Feb. 4, 2022). Where a plaintiff pleads reliance on such a labeling statement, and payment of a price premium as a result, she has alleged a cognizable economic injury for purposes of both statutory and Article III standing. *See id*. at 21 (reliance on unlawful label claim and payment of a premium price provides statutory standing to pursue unlawful prong UCL claim); *Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 989 (9th Cir. 2015) (paying more for a product is a quintessential economic injury).

### 1.    Plaintiff adequately alleged reliance on the front label.

Even Defendant admits that Plaintiff adequately pleads reliance on the front label protein claim. *See* ECF 40 at 9 ("When referring to the front-panel '10g PLANT-BASED Protein' claim, the FAC plainly states that Plaintiff relied on this language.") (citing FAC ¶ 56). And because, as described above, Plaintiff's unlawful prong claim alleges that the front label claim was prohibited from ever appearing on the package, the front label is the "statement at issue", and therefore, Plaintiff has sufficiently alleged standing. *See Nacarino*, 2022 U.S. Dist. LEXIS 20671, at *19.

Nevertheless, Sarah Lee attempts to equate this unlawfulness claim to the deception by omission claim, and argue that the "new allegations pertaining to 21 C.F.R. § 101.13(n) have no bearing on the Court's prior holding that she must allege reliance" on the NFP, purportedly because both claims involve "the omission of the DV%" in some fashion. ECF 40 at 11. But Sarah Lee ignores that the two theories are still distinct—even though they share some facts—and therefore are subject to a different reliance analysis. For the deception claim, the front label is misleading by omission **only if** the disclosure of the omitted information in the NFP would have changed Plaintiff's behavior. In other words, as the Court held, Plaintiff needed to allege that "she was **deceived** by the omission of the digestibility adjusted protein figure from the Nutrition Facts panel" to have a claim. Order at 18 (emphasis added). That renders the omitted information a key part of the "statement at issue" for that claim.

By contrast, the front label protein representation is unlawful **regardless** of whether the Plaintiff ever looked at or relied on the NFP, because the regulations prohibited that front label as a form of advertising on this product in these circumstances. She also need not allege that she

was deceived by the omission of the information in the NFP to establish that the front label was prohibited.[2] Although it is true that the omission in the NFP is the **reason** the front label was prohibited, a plaintiff need not allege she relied on (or even knew about) the reason something was unlawful to have standing. Plaintiff alleges that the front label protein claim attracted her to the product, and that she purchased and paid a premium for the product because of, and in reliance on, that claim. FAC ¶ 56. She also alleges that the front label claim was unlawful and never should have been on the package due to the regulations that specifically govern front label nutrient content claims, i.e., § 101.13(n) & (b). Accordingly, the front label is the injury producing conduct for purposes of this unlawfulness claim, and it is the front label on which she needs to allege reliance, which she has done. Because she "lost money . . . as a result of" Defendant's unlawful front label claim, she has standing to sue to seek restitution of the premium she paid. FAC ¶ 56.

### 2.    Plaintiff adequately alleges reliance on the NFP.

Even if reliance on the NFP is required for the new claim, Plaintiff has alleged it (which also suffices for Plaintiff's other remaining claims). Under California law, a plaintiff establishes reliance on an omission by alleging that "had the omitted information been disclosed, [he or she] would have been aware of it and behaved differently." *Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1225 (9th Cir. 2015); *see also Zeiger*, 526 F. Supp. 3d at 685; *Baranco v. Ford Motor Co.*, 294 F. Supp. 3d 950, 967 (N.D. Cal. 2018) (summarizing California law on reliance for consumer protection claims). In line with this precedent, the Court previously dismissed Plaintiff's misleading omission claim because it found that Plaintiff had not alleged "facts that would show that she looked at the Nutrition Facts label during the process of purchasing the Products" or that "the omission of the digestibility-adjusted sum contributed to her decision to purchase the Products." Order at 18. The FAC satisfies both these requirements.

---

[2] The reliance requirement for claims under the unlawful prong of the UCL stems from the causation element of UCL standing. Under the unlawful prong, Plaintiff must allege reliance *not* because the claim requires proof of deception—it does not—but because otherwise "purchasers who never 'viewed the defendant's advertising'. . . would have standing to sue [which] is inconsistent with Proposition 64." *Swearingen v. Amazon Pres. Partners, Inc*., 2014 U.S. Dist. LEXIS 36830, at *7 (N.D. Cal.   Mar. 18, 2014) (quoting *Kane v. Chobani, Inc*., No.  12-CV-02425-LHK, 2013 U.S. Dist. LEXIS 134385 *33–34 (N.D. Cal. Sept. 19, 2013).

As to the first, the FAC plainly alleges that Plaintiff "looked at and read the NFP on the Products before purchasing them for the first time"; that she "regularly checks the NFP before purchasing any product"; and that she would have seen a %DV had Sarah Lee disclosed it because "[s]he examines the %DV column for protein when manufacturers provide that information." FAC ¶ 57. This establishes that she would have been aware of the disclosure had it not been omitted.

As to the second, the FAC specifically alleges that "had Defendant adequately disclosed the corrected amount of protein per serving for each Product expressed as a %DV, as FDA regulations require, Plaintiff would not have purchased the products or would have, at minimum, paid less for them." *Id*. ¶ 57. And, though not necessary, she also alleged why that is the case: she "uses [the NFP] as a basis for buying and/or comparing similar products" and "will always choose the product that provides more of the recommended daily value of protein (i.e., has a higher %DV for protein). *Id*. Moreover, as to the Van's Protein Original Waffles specifically, she alleges that "[h]ad she seen that the product provided only 10% (or less) of the daily value of protein—i.e., only approximately 5 grams or less corrected amount of protein per serving" she would not have purchased them; would have paid less; or would have bought a competitor product because she "was looking for a product that would provide her 10 grams of useable protein per serving." *Id*. Because the Vans Protein Original Waffles did not have a statement of the corrected amount of protein, the only information available was the 10 gram quantity statement. *Id*. As a result, Plaintiff "believed she was receiving the full amount of that quantity in a form her body could use." *Id*. Without the corrected protein statement, Plaintiff had no reason to believe the products provided less protein than represented. *Id*. She also had no reason to believe the products consisted of anything other than high quality proteins. *Id*. These allegations show how "the omission of the digestibility-adjusted sum contributed to [Plaintiff's] decision to purchase the Products" (Order at 18)—i.e., that she would have behaved differently had the omitted information been disclosed.

California law also recognizes that a court can presume that a Plaintiff would have behaved differently if the omitted information is material. *Daniel*, 806 F.3d at 1225 (citation omitted). Materiality is generally a question of fact that cannot be resolved on the pleadings.

*Engalla v. Permanente Med. Grp., Inc.*, 938 P.2d 903, 976-77 (Cal. 1997); *see also In re Juul Labs, Inc., Mktg., Sales Practices, & Prods. Liab. Litig.*, 497 F. Supp. 3d 552, 630 (N.D. Cal. 2020) (Orrick, J.) (noting "[t]he particular significance of withheld information to named plaintiffs is a highly fact-based analysis typically resolved based on an evidentiary record"). Here, plaintiff alleges precisely why this information on protein quality was material to her, which allegations the court must accept as true. She alleges she is a vegan and that she has a vegetarian child, which means "protein is very important to her and her family," as is ensuring that "they all receive their daily recommended protein," which can "be difficult to do." *Id.* Thus, the Court can also presume that she would have acted differently had Defendant not omitted the information.

The Court initially dismissed this claim because the Court could not "reasonably infer that [Plaintiff's] purchasing decision was influenced by the missing information on the Nutrition Facts panel." Order at 18. The new allegations more than supply the facts the Court found were missing. Taken together and drawing all inferences in favor of the Plaintiff, the new allegations plausibly allege Plaintiff would have relied on the corrected protein statement in the NFP and acted differently had it not been omitted.

> ### i.      *Sarah Lee's contention that the reliance allegations fail is one of splitting hairs.*

Sarah Lee's primary attack on the reliance allegations is one of semantics and splitting hairs. Sarah Lee contends that the allegations are insufficient because the FAC does not include a sentence that states precisely, word-for-word, that Plaintiff "read and relied on the omission of the DV%" prior to purchasing the products. ECF No. 40 at 8-9.[3] There are numerous problems with this argument, but chief among them is that Sarah Lee seems to overlook the fact that the NFP ***includes*** the row for protein and its %DV. FAC ¶ 18. That means if Plaintiff looked at and read the NFP as whole—which she alleges she did (FAC ¶ 57)—then she necessarily looked at and read the omission of the %DV for protein too.

Regardless, Sarah Lee's argument is wrong on the law. As courts have recognized, the standard for pleading reliance on an omission is "low" and can be established "various ways."

---

[3] Undoubtedly, had Plaintiff included such a sentence, Defendant would have objected that it was too "conclusory."

*Madani v. Volkswagen Grp. of Am., Inc.*, 2019 U.S. Dist. LEXIS 133926, at \*31 (N.D. Cal. Aug. 8, 2019). Thus, Plaintiff need not allege any specific magic words such as Defendant's preferred "[Plaintiff] reviewed and relied on the omission of the %DV from the NFP." ECF 40 at 9. Indeed, that phrasing makes no sense logically. A consumer cannot "read" or "rely" on information that is not there. The law recognizes this, which is why the inquiry in an omission case focuses on whether the ***disclosure*** of the omitted information would have altered the Plaintiff's behavior, which even Defendant's own cases recognize. *See* ECF 40 at 9 (citing *O'Shea v. Epson Am., Inc.*, 566 F. App'x 605, 606 (9th Cir. 2014) for the proposition that "plaintiff must establish actual reliance for an omissions claim by demonstrating that 'had the omitted information been disclosed, [he or she] would have been aware of it and 'behaved differently.'"). As explained above, Plaintiff's allegations more than suffice to plausibly establish that Plaintiff would have noticed the %DV and "behaved differently" had Defendant disclosed it.[4]

Tellingly, none of the cases Sarah Lee cites adopts the narrow view that Plaintiff must use the specific phrase Defendant prefers. Rather, they stand for the unremarkable proposition that a plaintiff must actually receive and look at the misrepresentation or omission at issue—a standard Plaintiff easily satisfies here. *Bronson*, for instance, involved misrepresentations of Splenda qualities based on labels, website, and print advertising materials. The reliance allegations failed because there was no specific allegation that the plaintiffs ever looked at the website or print materials. *See also O'Shea*, 566 F. App'x at 606 (reliance was deficient because the plaintiff did not allege ever reading the website with the misrepresentations). *Durell* similarly found reliance to be insufficiently pled because there were no allegations that the plaintiff ever visited the website where the misrepresentation was located or "ever read the Agreement for Services." *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1362–63 (2010). *In re iPhone Application Litig.* also held that a plaintiff must allege "actually see[ing], read[ing], or hear[ing] the defendant's statement." *In re iPhone Application Litig.*, 6 F. Supp 3d 1004, 1025

---

[4] Thus, Defendants argument that Plaintiff "discredits the sufficiency of the reliance allegations regarding the omitted DV%," because she used a different phrasing to allege reliance on the front label claim (ECF 40 at 9) does not hold water. The different phrasing simply reflects the differences in establishing reliance on an affirmative statement versus an omission.

(N.D. Cal. 2013). Plaintiff here alleges that she did just that: she looked at and read the NFP, which includes the %DV, and regularly checks for the %DV before buying a product. FAC ¶ 57. These allegations suffice under all of the cases cited in the Court's prior Order and in Sarah Lee's Motion.

> ### ii.    Sarah Lee's argument that reliance is implausible lacks merit.

Sarah Lee also argues that any reliance from Plaintiff on the omission of the %DV was implausible as a matter of law. This argument hinges on a mischaracterization of a single allegation, which provides that Plaintiff "examines the %DV column for protein when manufacturers provide that information, although not all always do." ECF 40 at 4, 10 (citing FAC ¶ 57). In a tortured reading, Sarah Lee claims that this allegation somehow "[a]dmits that she ignores the portion of the label when no DV% is provided." *Id*. at 2. It does no such thing. Rather, it simply alleges that Plaintiff notices the %DVs when they are provided and also notices when they are not. After all, when there is no %DV there is nothing to "examine." Nothing in the allegation comes close to suggesting that Plaintiff ***never*** looks at the %DV column when a manufacturer does not provide the %DV for protein. Indeed, that would be physically impossible. The only way Plaintiff could intentionally "ignore" the %DV column ***only*** when it is empty, as Defendant suggests, is if Plaintiff first looks at the %DV column and sees that it is empty. In so doing Plaintiff would necessarily be aware that the information is omitted and also, not coincidently, would have seen the %DV had it been disclosed. Thus, far from rendering her reliance allegations implausible, this allegation establishes the first portion of proving reliance in an omission case, i.e., that she "would have been aware" of the omitted information "had it been disclosed." *Daniel*, 806 F.3d at 1225.

Moreover, other allegations contradict Sarah Lee's reading. As explained above, the FAC plainly alleges that Plaintiff "looked at and read the NFP" for the Waffles which includes the row for protein. FAC ¶¶ 18, 57. She would have noticed the %DV because she reads it when it is provided. *Id*. at ¶ 57. She also would have changed her behavior had it had been included because, among other things, Plaintiff would not have purchased the Products or would have, at minimum, paid less for them. *Id*. Given that the column for the %DV for protein was blank, "she can only

go off of the stated grams of protein." *Id*. Taken together, these allegations plausibly allege reliance.

### iii. *Sarah Lee's argument as to the timing of the reliance is wrong and misguided.*

In a last ditch effort, Sarah Lee argues that the only purchases that caused harm are those in which Plaintiff read and reviewed the NFP at the same time as the front label "10g PLANT-BASED Protein" claim and that Plaintiff never alleges "that she considered *any* aspect of the NFP—much less the omitted DV%—in conjunction with her reliance on the '10g PLANT-BASED Protein' claim." ECF 40 at 10-11. This argument is frivolous.

As a matter of law, the notion that the only "injury-inducing" purchases are those in which Plaintiff reviewed both the %DV column for protein and the front label at the same time is wrong. As explained above, Plaintiff's new front label claim requires reliance only on the front label to cause injury. Because the front label claim was unlawful and never should have been on the front label to begin with, each purchase in reliance upon the front label claim were injury-inducing purchases because, had the claim not been on the products, Plaintiff either would not have bought the products or would have paid less. FAC ¶ 56. Any allegations that Plaintiff reviewed and relied up on the NFP are, therefore, unnecessary for the new claim.

Moreover, as a matter of fact, Defendant's assertion is simply false. Plaintiff clearly alleges that she considered the front label "in conjunction" with the omission of the protein quality disclosure in the NFP. At paragraph 58 she alleges:

> Without the statement of the corrected amount of protein per serving in the form of a %DV, the only information plaintiff had about the Products was the 10 gram protein quantity claim, and she believed she was receiving the full amount of that quantity in a form her body could use. Because the Products did not provide any statement of the corrected amount of protein per serving, she did not have any reason to believe that the Products provided less protein than the amount represented in the NFP and on the front of the label. Nor did she have any reason to know the Products consisted of anything other than high quality proteins, and did in fact believe she was receiving 10 grams of high quality protein.

She also alleges that she purchased the products because she believed that the products "would actually provide her the specific amount of protein claimed on the front labels in a form her body

could utilize." *Id*. ¶ 56. The only way that is possible is if she considered the front label claim in conjunction with the absence of a %DV disclosure that would have disabused her of her belief.[5]

Moreover, Defendant's suggestion that the allegations specifically "decouple" the front and back reliance allegations makes no sense. ECF 40 at 11. Defendant bases this argument on the fact that the FAC mentions that Plaintiff reviewed and relied on the NFP "the 'first time' she purchased" the protein waffles.[6] *Id*. But Defendant ignores that even if the only time Plaintiff ever looked at or read the NFP was the first time she was considering whether to purchase the products, the omission of the %DV still altered her purchasing behavior for ***every*** subsequent purchase (as its disclosure would also have done). As noted above, Plaintiff plainly alleges that the omission of the %DV led her to believe that the front label 10g protein claim meant she was receiving the full 10g of protein in a form her body could use, which belief was false. FAC ¶ 58. She also plainly alleges that she relied on this false understanding to make "***each of her purchases***" (FAC ¶ 56) from "from "approximately 2019 to February 2021." *Id*. ¶ 55. In other words Plaintiff specifically alleges that she ***always*** made her purchases in reliance on her false understanding of the front label claim, which was formed by the omission of the corrected amount of protein per serving from the NFP in the form of a %DV.[7]

Finally, this case is nothing like the cases Sarah Lee cites in support of its misguided "timing" argument. Most of them involve misrepresentations made months, even years, after the purchase. Because the misrepresentations occurred *after* the alleged injury-inducing purchases,

---

[5] Indeed, as to the protein waffles specifically, she alleges that she "was looking for a product that would provide her 10 grams of useable protein per serving" and that had "she seen that the product provided only 10% (or less) of the daily value for protein—i.e., only approximately 5 grams or less corrected amount of protein per serving—she would not have purchased the product or, at a minimum would have paid less for it." *Id*. This too is possible only by considering the front label claim "in conjunction" with the absence of the corrected amount of protein per serving in the NFP.

[6] Defendant asserts that Plaintiff alleges she reviewed the NFP "only" the first time she purchased the products, which is also false. Although Plaintiff specifically mentions the "first time" of purchase, she also plainly alleges she "regularly checks the NFP." FAC ¶ 57.

[7] This allegation also puts paid to Defendant's false assertion that Plaintiff "does not allege that she considered the '10g PLANT-BASED Protein' claim at the time of [her first] purchase." ECF No. 40 at 11. Clearly, if she relied on the claim for "each of her purchases" (FAC ¶ 56), that would necessarily include the first purchase.

reliance on those misrepresentations could not be established as a matter of law.  *See e.g., Cullen v. Netflix, Inc*., 2013 WL 140103, at \*4–5 (N.D. Cal. Jan. 10, 2013) (misrepresentations made two years after the purchase); *Golden v. Home Depot U.S.A., Inc.*, No. 1:18-cv-00033-, 2020 U.S. Dist. LEXIS 89941, at \*13 (E.D. Cal. May 20, 2020) (dismissed at summary judgment because misrepresentations were made "weeks" or "months" after the purchase). Here, by contrast, the representations at issue in this case—the front label protein claim and the omission of the %DV —were on the label at the time of each of Plaintiff's purchases. Plaintiff alleges that she read and relied on these claims in making her purchases. These allegations suffice.

***iv.    Plaintiff adequately pleads that her reliance was reasonable.***

Without a basis to contest Plaintiff's reliance allegations, Sarah Lee argues the merits, claiming that Plaintiff's reliance on the NFP was not reasonable as a matter of law. *See* ECF 40 at 12–13. This too is without merit.

As an initial matter, false advertising claims under the FAL, the CLRA, and the fraudulent and unfair prongs of the UCL are governed by the "reasonable consumer" standard. *Williams v. Gerber Products Co.*, 552 F.3d 934, 938 (9th Cir. 2008). However, the Ninth Circuit has made clear that the reasonable consumer test, and thus, reasonable reliance does not come into play for claims based on the unlawful prong of the UCL; that claim needs only actual subjective reliance. *See Nacarino*, 2022 U.S. Dist. LEXIS 20671, at \*19 ("The test of reliance is not inherently based on objective standard. The reasonable consumer test of reliance is a requirement under the UCL's unlawful prong only when it is an element of the predicate violation."); *Bruton v. Gerber Prods. Co.*, 2017 U.S. App. LEXIS 12833, at \*6–7 (9th Cir. July 17, 2017) (unpublished) (finding that where the "predicate violation [] is of the Sherman Law" there is "no requirement that the public be likely to experience deception" when, as here, the underlying FDA regulations include no such requirement); *Swearingen v. Amazon Pres. Partners, Inc*., 2014 U.S. Dist. LEXIS 36830, at \*7 (N.D. Cal. Mar. 18, 2014) (likelihood of deception "does not apply to the Plaintiff's claims under the unlawful prong of the UCL predicated on Sherman Law violations"). Thus, the only claims that require a showing of "reasonable reliance" are Plaintiff's fraud-based claims. *See Ham v. Hain Celestial Grp., Inc.*, 70 F. Supp. 3d 1188, 1193 (N.D. Cal. 2014). Even so, "reasonableness"

is a question of fact, and typically inappropriate for resolution at the motion to dismiss stage, absent "rare situations" where the violation is definitively implausible. *Williams*, 552 F. 3d at 938. As in *Gerber*, this is not such a "rare" case.

Sarah Lee bases its argument on the allegation that because Plaintiff was a vegan, it is generally "difficult" for her and her vegetarian daughter to consume their daily recommended protein. ECF 40 at 12-13. From that allegation, Sarah Lee extrapolates that Plaintiff should have known that not all of the protein in the Waffles would be absorbable, which purportedly renders her reliance allegations "unreasonable and implausible." *Id*. at 13. The logical flaws with this conclusion are obvious.

First, the argument assumes that because someone is vegan, they necessarily know about the complexities of protein digestibility, essential amino acid profiles, and that because of those things, not all proteins can be fully utilized in the human body. The FAC does not allege anything close to that, and the Court cannot draw such an inference *against* the plaintiff on a motion to dismiss. Further, Defendant's proposed inference is unreasonable. Vegans are just people who do not consume meat or meat-based products. The fact that it is "difficult" for vegans to consume their daily recommended protein intake is because, generally speaking, plant products have less protein in them than animal products (which is likely why a product advertising high amounts of "plant-based protein" appealed to Plaintiff). The fact that a person is vegan and it is difficult for them to get enough protein does not mean that they automatically have a more sophisticated understanding of protein digestibility or protein quality than average consumers.

Second, even assuming that Plaintiff had some sort of advanced knowledge—which she does not allege—nothing in the FAC states or suggests that *all* plant-based proteins are not fully digestible and that she would therefore automatically know that Defendant's "PLANT-BASED" protein was not high quality. The FAC itself acknowledges that, while rare, some plant-based proteins include all the necessary amino acids. FAC ¶ 30 ("Plant protein contains higher levels of antioxidants, but *rarely* contains all nine essential amino acids.") (emphasis added). Moreover, although also difficult to achieve, plant proteins can be combined in such a way that an essential amino acid deficiency in one can be corrected by an over-abundance of that same essential amino

acid in another. *See* 58 Fed. Reg. 2079, 2105 (Jan. 6, 1993) (noting the "complementary potential" of some proteins whereby "a food rich in a particular amino acid can 'complement' a food low in that amino acid to result in a total diet that provides sufficient amounts of the amino acid"). So, to be able to do what Defendant suggests she could—know that the protein in its products was not fully absorbable—Plaintiff would have to look at all the ingredients in the Waffles, know the PDCAAS of each by heart without the benefit of the required scientific testing, and then determine what portion of the protein within the Waffles was utilizable. But as explained in the FAC, "reasonable consumers do not walk around with the PDCAAS values for various protein sources in their heads" and, as a result, "[t]hey would not know the true amount of protein the Products provide nutritionally merely by looking elsewhere on the product package." FAC ¶ 47. Instead, figuring that out "requires investigation well beyond the grocery store aisle and knowledge of food chemistry well beyond that of the average consumer." *Id.* Nothing in the FAC suggests that Plaintiff remotely had this ability, or any knowledge beyond that of the average consumer on these subjects.

Not only are Defendant's assumptions and inferences unreasonable and illogical, they also directly contradict what Plaintiff alleges about her own state of knowledge at the time of purchase. Plaintiff alleges that when she saw the "10g PLANT-BASED protein" claim she relied on it and believed that she was receiving the "full amount of that quantity in a form her body could use." FAC ¶ 58. She further alleges that "Because the Products did not provide any statement of the corrected amount of protein per serving, she did not have ***any reason*** to believe that the Products provided less protein than the amount represented in the NFP and on the front of the label. Nor did she have ***any reason to know*** the Products consisted of anything other than high quality proteins, and did in fact believe she was receiving 10 grams of high quality proteins." *Id.* (emphasis added).

Ultimately, in contending that Plaintiff has specialized knowledge about protein simply because she is vegan, Sarah Lee is asking the Court to draw an inference against her and to treat as false her highly specific allegations that she had no such knowledge. That is something the Court has no power to do since, at the motion to dismiss stage, the court must "assume [the

plaintiff's] allegations to be true and draw all reasonable inferences in [her] favor". *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004). Based on the allegations in the FAC, the Court can reasonably infer that Plaintiff is both a vegan and does not have an above-average knowledge about protein quality or food chemistry. Indeed, contrary to Sarah Lee's position, that is the inference the Court ***must draw*** at this stage.

The cases Sarah Lee cites do not change this conclusion. *Maxwell* was a case about consumer deception, rather than whether a particular consumer's reliance was reasonable. The Court held, among other things, no reasonable consumer would believe that Pepsi did not contain artificial ingredients since "soft drinks such as Pepsi are highly artificial" and the label never represented that it was free of artificial ingredients. *Maxwell v. Unilever United States, Inc*., No. 5:12-cv-01736-EJD, 2018 U.S. Dist. LEXIS 54222, at *14-17 (N.D. Cal. Mar. 29, 2018). *Kane*, too, had irreconcilable issues, including a complete failure to explain how the plaintiffs could have known "that dried cane syrup was a form of sugar, but nevertheless believed that evaporated cane *juice* was not." *Kane v. Chobani, Inc.,* No. 12-CV-02425-LHK, 2013 U.S. Dist. LEXIS 134385, at *24 (N.D. Cal. Sep. 19, 2013)

The facts of *Guttman* are also distinguishable. The plaintiff's deposition testimony directly discredited his alleged understanding that "0g Trans Fat" on the label meant literally no trans-fat was in the product. *Guttmann v. La Tapatia Tortilleria, Inc*., No. 15-cv-02042-SI, 2015 U.S. Dist. LEXIS 156800, at *9 (N.D. Cal. Nov. 18, 2015). Based on his extensive litigation history, he knew that products could be labeled with "0g Trans Fat" even when it contains some amount of trans-fat and that he could confirm whether there was trans-fat in the product by checking the ingredient list, which he did. *Id*. This case is not so simple, and nothing in the FAC suggests that Plaintiff had the ability to confirm the truthfulness of Sarah Lee's assertions.[8]

---

[8] Sarah Lee's request for a Court Order granting "targeted discovery going to Plaintiff's reliance and standing" is without merit. There is no basis to deviate from the normal flow of discovery and motions practice.  As is routine in consumer fraud cases, Sarah Lee has simply mounted a challenge to the named plaintiff's reliance. The fact that Sarah Lee has done so here is unsurprising and does not give the Court any reason to treat this case differently. Moreover, *Guttmann* is inapposite. The Court ordered discovery there because it had serious reasons to doubt the reasonableness of the plaintiff's reliance since he had filed a similar case ***five years earlier***, in which he alleged that he became aware of what "0g Trans Fat" meant; that awareness necessarily precluded him from reasonably relying on the same statement years later. *See Peviani*

### C. Plaintiff's Reliance Allegations Suffice for Her Common Law Fraud and Unjust Enrichment Claims as Well as F.R.C.P. 9(b).

As explained above, Plaintiff alleges reliance both on the front label protein claim and the omission of the %DV. These allegations sufficiently allege reliance for purposes of pleading fraud and unjust enrichment claims.

The allegations also resolve the Court's concern about Rule 9(b). In its Order, the Court held that the Complaint's prior allegations "stumble[] on the 'how,' though: her legal theory is that the front-label total protein claim is deceptive because the protein digestibility-adjusted figure is not included in the Nutrition Facts panel, but—as discussed above—Brown has not pleaded facts showing that she looked at the Nutrition Facts panel." Order at 21. The FAC rectifies this as described in detail above. *See generally* FAC ¶¶ 57-58. The FAC also includes further allegations about how Plaintiff's behavior would have changed had the DV% been disclosed. *Id.* These allegations establish the "how" the Court found to be missing from the prior iteration of the Complaint.

Sarah Lee nonetheless quibbles over the "when" element, even though the Court previously found that Plaintiff alleged it. The Court specifically held "Brown's complaint satisfies most of these requirements: she alleges that Sara Lee (who) misrepresented the amount of protein in its products (what) to consumers when they purchased the Products (when and where)." Order at 21. The "when" element is satisfied because, as the Court previously held, Sarah Lee made the misrepresentations at the time of purchase, (and as Plaintiff alleged throughout the class period). *See* FAC ¶¶17-18 (describing how the products at issue "uniformly" made the front label protein claims and omitted the "corrected amount" of protein from the NFP "during the entirety of the Class Period."). Plaintiff unequivocally alleges that she purchased the relevant products from approximately 2019 to 2021. FAC ¶ 55. This suffices for the "when" element, as this Court previously held, and numerous others within this district have so held. *E.g. Bruton v. Gerber Prods. Co.*, 2014 U.S. Dist. LEXIS 5493, at *47 (N.D. Cal. Jan. 15, 2014) (Koh, J.) ("The SAC

---

*v. Hostess Brands, Inc.*, 750 F. Supp. 2d 1111, 1114 (C.D. Cal. 2010); *Guttmann v. La Tapatia Tortilleria, Inc.*, No. 15-cv-02042-SI, ECF No. 32 (N.D. Cal. Aug. 18, 2015) Those concerns do not exist here. Although Plaintiff has filed other cases about misleading protein claims, they were filed very close in time to each other, and none pre-date the purchases at issue in this case.

1    alleges that Bruton bought the Purchased Products throughout the class period, which runs from

2    May 11, 2008 to the present. As this Court and numerous other courts in this district have

3    concluded in other food misbranding cases, the SAC's allegations are sufficient to place Gerber

4    on notice as to the time period in which Bruton's allegations arise.") (collecting cases).[9]

5         **D.    Plaintiff Should Be Granted Leave to Amend if Necessary.**

6         If a complaint is dismissed for failure to state a claim, "leave to amend should be granted

7    unless the Court determines that the allegation of other facts consistent with the challenged

8    pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture*

9    *Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986). Indeed, leave to amend is only really properly denied

10   "where the amendment would be futile*." DeSoto v. Yellow Freight Sys.*, 957 F.2d 655, 658 (9th

11   Cir. 1992).  Should this Court find the Complaint insufficient, Plaintiff requests leave to amend.

12

13

14

15

16

17

18

19

20

21

22

_____

23   [9] Sarah Lee's demand that Plaintiff allege the precise date of her first purchase because that is
     purportedly the "only" time she read the NFP (ECF 40 at 14-15) is wrong on the facts and the
24   law. As noted above, Plaintiff alleged that she "regularly checks the NFP" not that she only ever
     checked it the first time. FAC ¶ 57. And regardless, the law is clear, the purpose of Rule 9(b) is
25   to put Defendants on adequate notice to defend against the claim alleged. Plaintiff alleges that
     the Defendant ***never*** included the corrected amount of protein per serving in the NFP, which
26   Defendant does not dispute, so the precise date is not remotely necessary to defend the claim.
     Rule 9(b) is not a game to test the Plaintiff's memory of the exact date of her first purchase, and
27   courts have routinely held that "Plaintiff need not plead the exact date(s) [she] made [her]
     purchases to provide [Defendant] with adequate notice to defend the charges." *Andino v. Apple,*
28   *Inc.*, 2021 U.S. Dist. LEXIS 76011, at *11 (E.D. Cal. Apr. 19, 2021).

Dated: July 13, 2022

**GUTRIDE SAFIER LLP**

_s/ Seth A. Safier_
Seth A. Safier (State Bar No. 197427)
seth@gutridesafier.com
Marie A. Mccrary (State Bar No. 262670)
marie@gutridesafier.com
Hayley Reynolds (State Bar No. 306427)
hayley@gutridesafier.com
Kali Backer (State Bar No. 342492)
kali@gutridesafier.com
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 639-9090
Facsimile: (415) 449-6469

Matthew T. McCrary (admitted _pro hac vice_)
matt@gutridesafier.com
4450 Arapahoe Ave., Suite 100
Boulder, CO 80303
Telephone: (415) 639-9090

_Attorneys for Plaintiff_
_Molly Brown_