UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MOLLY BROWN,<br><br>    Plaintiff,<br><br>    v.<br><br>VAN'S INTERNATIONAL FOODS, INC.,<br><br>    Defendant. | Case No. 22-cv-00001-WHO<br><br>**ORDER DENYING MOTION TO DISMISS AND SETTING CASE MANAGEMENT CONFERENCE**<br><br>Re: Dkt. No. 40 |

## INTRODUCTION

In this putative class action, plaintiff Molly Brown contends that the packaging for certain types of frozen waffles and pancakes produced by defendant Van's International Foods, Inc. ("Van's") unlawfully claims to provide specific amounts of protein per serving. The detailed factual and legal background for Brown's claims is set forth in my May 10, 2022 Order. *See* May 22, 2022 Order Granting Motion to Dismiss ("May 10, 2022 Order") [Dkt. 32]. This background information is recounted below to the extent relevant to Brown's new claims and Van's new arguments in support of dismissal. I dismissed the original complaint because, among other things, Brown had failed to establish reliance on the allegedly missing information in the Nutrition Facts Panel. *Id.* at 17 – 18. For the reasons discussed below, Brown has now adequately established reliance. I therefore **DENY** Van's motion to dismiss the First Amended Complaint.[1]

---

[1] I have reviewed the papers submitted by the parties in connection with Van's motion to dismiss and have determined that the motion is appropriate for decision without oral argument, as permitted by Civil Local Rule 7-1(b) and Federal Rule of Civil Procedure 78(b).

# BACKGROUND[2]

## I. REGULATORY BACKGROUND

In 21 C.F.R. § 101.9, the Food and Drug Administration ("FDA") identifies what a manufacturer can (and sometimes, must) include in the Nutrition Facts Panel—the box on the back or side of the packaging that lists the amounts of relevant nutrients. When it comes to protein, the Nutrition Facts Panel must include "the number of grams of protein in a serving, expressed to the nearest gram." 21 C.F.R. § 101.9(c)(7). As a general rule, this figure may be calculated based on the product's nitrogen content, or based on the product's amino acid content (which adjusts for digestibility). *Id.*; *see also* 21 C.F.R. § 101.9(c)(7)(i).

If, however, the packaging contains statements about protein outside the Nutrition Facts Panel, then the manufacturer must include certain information in the Nutrition Facts Panel. *Id.* § 101.9(c)(7)(i). The additional statement is called a "nutrient content claim." *See* 21 C.F.R. § 101.13(c). When a product makes such a protein content claim, the Nutrition Facts Panel *must* include a "statement of the corrected amount of protein per serving," expressed as a "Percent of Daily Value." 21 C.F.R. § 101.9(c)(7)(i). This figure takes the "actual amount of protein" from the nutrition label and adjusts it for digestibility based on the product's "protein digestibility-corrected amino acid score." *Id.* § 101.9(c)(7)(ii). Nutrient content claims must also comply with applicable FDA regulations governing nutrition labeling. *See* 21 C.F.R. §§ 101.13(b), (n).

In addition to section 101.9(c)(7), which governs statements about protein within the Nutrition Facts Panel, there is a more general provision—section 101.13—that applies to statements about nutrients outside the Nutrition Facts Panel, such as a statement made on the front of the packaging. 21 C.F.R. § 101.13. Under section 101.13(i)(3), a product's packaging may contain a statement about the amount or percentage of a nutrient such as protein if the statement "is not false or misleading in any respect." *Id.* § 101.13(i)(3).

---

[2] This background information is recounted to the extent relevant to Brown's new claims and Van's new arguments in support of dismissal.

## II. FACTUAL AND PROCEDURAL BACKGROUND

On January 1, 2022, Brown filed suit against Van's, alleging that specific frozen waffles and pancakes manufactured and sold by Van's (the "Waffles") violated state and federal labeling laws. Complaint [Dkt. 1]. Van's subsequently moved to dismiss or to stay pending the appeal of a similar case. [Dkts. 20, 22]. On May 10, 2022, I granted Van's motion to dismiss and denied the motion to stay. May 10, 2022 Order. As relevant here, I found that Brown had not adequately alleged reliance for certain claims and dismissed the complaint with leave to amend. *Id.*

In her First Amended Complaint ("FAC"), Brown reasserts many factual allegations. *See* FAC [Dkt. 34]. Brown, a resident in California, began purchasing the Waffles in approximately 2019 and continued to purchase them at various times until February 2021. *Id.* ¶¶ 9, 14, 55. As alleged in the FAC, the Waffles prominently state that the products contain a certain amount of protein on the front of the product's packaging. *Id.* ¶ 16. The Van's Power Grain Protein Original Waffles, for instance, includes the statement "10g PLANT-BASED Protein" on the front of the product's packaging. *Id.* ¶ 17. Brown refers to the protein statement on the front of the Waffles' packaging as a "front label protein claim." *See, e.g.*, *id.* ¶¶ 19, 41, 72. The FAC also alleges that none of the Waffles include a digestibility-adjusted protein figure (expressed as a percent daily value) in the Nutrition Facts Panel. *Id.* ¶ 18.

The FAC contains new allegations regarding Brown's reliance on the front label claim and the missing information in the Nutrition Facts Panel. Brown explained that because she is vegan and her youngest child is a vegetarian, "protein is very important to her and her family." *Id.* ¶ 57. As a result, Brown "regularly checks" the Nutrition Facts Panel "before purchasing any product" and uses the Nutrition Facts Panel as a basis for comparing similar products. *Id.* According to Brown, she purchased the Waffles after "reading and relying on the truthfulness of Defendant's front labels that promised the Products provided a specific number of grams of protein per serving." *Id.* ¶ 56. Brown also "looked at and read" the Nutrition Facts Panel on the Waffles "before purchasing them for the first time." *Id.* ¶ 57. Brown specifically alleged that when she purchased the Van's Power Grain Protein Original Waffles, she "was looking for a product that would provide her [with] 10 grams of usable protein per serving." *Id.* ¶ 58. Had Brown "seen that

3

the [Power Grain Waffles] provided . . . only approximately 5 grams or less corrected amount of protein per serving," Brown "would not have purchased the product or, at a minimum would have paid less for it." *Id.*

Brown alleges that the protein claims on the Waffles are actionable for several reasons that flow from the allegedly omitted information in the Nutrition Facts Panel. First, she advances a new theory that the front label protein claim is "unlawful per se" because the Waffles contain a protein content claim on the front of the packaging but do not include the digestibility-adjusted protein amount in the Nutrition Facts Panel in violation of 21 C.F.R. § 101.9(c)(7)(i) and 21 C.F.R. §§ 101.13(n) and (b). FAC ¶ 41, *see also id.* ¶¶ 6, 19, 36, 72–73. Second, she asserts that the same conduct violates § 101.9(c)(7)(i)–(iii). *Id.* ¶¶ 6, 37, 41, 72–73. Third, she states that the front label protein claim "is likely to mislead reasonable consumers" because of the allegedly omitted digestibility-adjusted protein amount. *Id.* ¶¶ 7, 20, 38–39, 42, 73.

Based on these facts, Brown brought the following five causes of action on behalf of herself and other similarly situated consumers in the United States: (i) unlawful, unfair, and fraudulent trade practices in violation of Business & Professions Code § 17200 (UCL); (ii) violation of the Consumers Legal Remedies Act (the CLRA), California Civil Code § 1750 *et seq.*; (iii) false advertising under Business & Professions Code § 17500 (FAL); (iv) common law fraud, deceit, and/or misrepresentation; and (v) unjust enrichment. *Id.* ¶¶ 69–119. On June 29, 2022, Van's moved to dismiss the FAC for lack of reliance. *See* Motion to Dismiss ("MTD") [Dkt. 40] at 1–2.

**LEGAL STANDARD**

**I.    RULE 12(b)(1): SUBJECT MATTER JURISDICTION**

Under Federal Rule of Procedure 12(b)(1), a district court must dismiss a complaint if it lacks subject-matter jurisdiction to hear the claims alleged in the complaint. Fed. R. Civ. P. 12(b)(1). "Standing is a threshold matter central to our subject matter jurisdiction." *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007). "The Supreme Court has made clear that when considering whether a plaintiff has Article III standing, a federal court must

1    assume *arguendo* the merits of his or her legal claim." *Zeiger v. WellPet LLC*, 304 F. Supp. 3d
2    837, 843 (N.D. Cal. 2018) (citation omitted).

## II.     RULE 12(b)(6): FAILURE TO STATE A CLAIM

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff pleads facts that "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). There must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570.

In deciding whether a claim has been stated upon which relief can be granted, the court accepts all factual allegations as true and draws all reasonable inferences in favor of the plaintiff. *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). "[A]llegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences," however, need not be "accept[ed] as true." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (internal quotation omitted).

If the court dismisses a complaint, it "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)). In making this determination, the court should consider factors such as "the presence or absence of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party and futility of the proposed amendment." *Moore v. Kayport Package Express*, 885 F.2d 531, 538 (9th Cir. 1989) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

### III. RULE 9(b): HEIGHTENED PLEADING FOR FRAUD CLAIMS

Claims sounding in fraud or mistake are subject to the heightened pleading standard of Federal Rule of Civil Procedure 9(b), which requires that such claims "state with particularity the circumstances constituting fraud or mistake," Fed. R. Civ. P. 9(b), including "the who, what, when, where, and how of the misconduct charged." *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal quotation marks and citation omitted). "The plaintiff must set forth what is false or misleading about a statement, and why it is false." *Id.* The allegations of fraud "must be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007). A plaintiff claiming fraud must also plead reliance. *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 326–27 (2011) (UCL); *Princess Cruise Lines, Ltd. v. Superior Court*, 179 Cal. App. 4th 36, 46 (2009) (CLRA).

## DISCUSSION

Van's argues that the FAC must be dismissed in its entirety for "fail[ure] to plead the necessary reliance." MTD at 1; *see also id.* at 5–6 (describing four reliance-based arguments for dismissal). First, it contends that Brown lacks standing for her UCL, CLRA, and FAL claims because "she fails to plausibly allege reliance" on the allegedly omitted information from the Nutrition Facts Panel. *Id.* at 7–12. Second, it alleges that Brown's reliance allegations are not reasonable in light of other allegations in the FAC. *Id.* at 12–13. Third, it argues that Brown's common law fraud and unjust enrichment claims also fail for lack of reliance. *Id.* at 13. Finally, it asserts that Brown's reliance allegations fail to satisfy the heightened pleading standards of Rule 9(b). *Id.* at 14–15. None of these arguments has merit.

### I. BROWN ADEQUATELY ALLEGED RELIANCE.

To establish standing under the UCL, CLRA, or FAL, a plaintiff must allege reliance on the purported misrepresentations at issue and economic injury as a result. *See Kwikset*, 51 Cal. 4th at 326–27; *Brown v. Natures Path Foods, Inc.*, No. 21-cv-05132-HSG, 2022 WL 717816, at *4 (N.D. Cal. Mar. 10, 2022); *see also Swearingen v. Amazon Pres. Partners, Inc.*, No. 13-cv-04402-

6

WHO, 2014 WL 1100944, at *3 (N.D. Cal. Mar. 18, 2014) ("As with the UCL, [p]laintiffs must allege reliance on the specific marketing materials claimed to be misleading in order to establish standing to bring claims under the . . . CLRA.") (internal quotation and citation omitted). "'A consumer who relies on a product label and challenges a misrepresentation contained therein can satisfy the standing requirement of [the UCL] by alleging . . . that he or she would not have bought the product but for the misrepresentation.'" *Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1020 (9th Cir. 2020) (quoting *Kwikset*, 51 Cal. 4th at 330)). To satisfy the causation requirement, plaintiffs are required to plead and prove that they actually relied on the statement at issue. *See Great Pac. Sec. v. Barclays Capital, Inc.*, 743 Fed. App'x 780, 783 (9th Cir. 2018) (citing *Kwikset*, 51 Cal. 4th at 326–27).

"A plaintiff bringing a claim under the 'unlawful' prong of the UCL must similarly plead actual reliance to establish standing if the predicate unlawful act is based on misrepresentation or fraud." *Victor v. R.C. Bigelow, Inc.*, No. 13-cv-02976-WHO, 2014 WL 1028881, at *5 (N.D. Cal. Mar. 14, 2014); *see also Figy v. Amy's Kitchen, Inc.*, No. 13-cv-03816-SI, 2013 WL 6169503, at *3 (N.D. Cal. Nov. 25, 2013) ("[B]ecause the statutes plaintiff relies on prohibit specific types of misrepresentations on food labels—the listing of an ingredient by a name other than its common or usual name—the actual reliance requirement applies to plaintiff's claim even though it is brought under the unlawful prong of the UCL."); *Bruton v. Gerber Prod. Co.*, No. 12-cv-02412-LHK, 2014 WL 172111, at *9 (N.D. Cal. Jan. 15, 2014) ("[T]he Court takes this opportunity to reiterate its position, stated in numerous other food misbranding cases, that actual reliance and injury are required to establish statutory standing under the UCL's unlawful prong whenever the underlying alleged misconduct is deceptive or fraudulent."); *cf. Nacarino v. Chobani, LLC*, No. 20-cv-07437-EMC, 2022 WL 344966, at *7 (N.D. Cal. Feb. 4, 2022) (requiring actual reliance for claim brought under the unlawful prong of the UCL based on Sherman Law violation).

Van's insists that Brown's UCL, CLRA, and FAL claims fail because Brown did not expressly allege that she "relied upon" the omitted information in the Nutrition Facts Panel. MTD at 8 ("Put bluntly, the FAC contains *no* express allegation of fact that the Plaintiff relied on the

7

omission of the DV% on the Waffles' labels.") (emphasis in original). It points out that Brown specifically alleged that she "made each of her purchases after reading and relying on the truthfulness of Defendant's front labels" but that Brown merely "looked at and read" the Nutrition Facts Panels on the Waffles "before purchasing them for the first time." *Id.* at 9–10 (quoting FAC ¶¶ 56, 57). It also argues that Brown "decouples" her reliance allegations relating to the front label from Brown's reliance on the missing information in the Nutrition Facts Panel. *Id.* at 11.

In response, Brown attacks both the premise that she needed to allege reliance on the omitted information in the Nutrition Facts Panel for her "unlawful" UCL prong claim and Van's conclusion that she failed to do so. Opp. at 7–8. She contends that Van's "focuses almost exclusively on the deception aspect of this case" and "largely ignores" her new claim asserted under the UCL's unlawful prong. *Id.* at 1. According to Brown, "the standing analysis with respect to the two claims is different": the front label protein claim is actionable under the UCL's fraud prong "only if the disclosure of the omitted information in the [Nutrition Facts Panel] would have changed [Brown's] behavior." *Id.* In contrast, the front label protein claim "is unlawful *regardless* of whether the Plaintiff ever even looked at the [Nutrition Facts Panel] because the FDA's regulations strictly prohibited it." *Id.* at 1–2 (emphasis in original). Finally, she contends that even if reliance on the Nutrition Facts Panel is required for the new claim, she has sufficiently pleaded reliance. *Id.* at 8. Because she has sufficiently pleaded reliance on both the front label claim and the missing information in the Nutrition Facts Panel, I do not reach the question of whether she needed to establish reliance on the missing information in the Nutrition Facts Panel for her "unlawful per se" claim regarding the front label protein statement asserted under the UCL's unlawful prong.

The FAC includes ample allegations relating to Brown's reliance on both labels. With regard to the front label, Brown purchased the Waffles "after reading and relying on" the front label protein claims. FAC ¶ 56. She "believed the truth of each representation, i.e., that the product would actually provide her [with] the specific amount of protein claimed on the front labels in a form her body could use." *Id.* She alleged that she would "would not have been drawn

1   to the [Waffles] and would not have purchased them" "[h]ad Defendant complied with the law and
2   not made the protein claims on the front of its packages." *Id*.

3         With regard to the omitted digestibility-adjusted protein figure in the Nutrition Facts Panel,
4   "[t]he standard for pleading reliance on account of an omission is low." *Madani v. Volkswagen*
5   *Grp. of Am., Inc.*, No. 17-cv-07287-HSG, 2019 WL 3753433, at *11 (N.D. Cal. Aug. 8, 2019).
6   Brown may demonstrate actual reliance by pleading that "had the omitted information been
7   disclosed, [she] would have been aware of it and behaved differently.'" *Daniel v. Ford Motor*
8   *Co.*, 806 F.3d 1217, 1225 (9th Cir. 2015) (quoting *Mirkin v. Wasserman,* 5 Cal. 4th 1082, 1093
9   (1993)).  She has done so.

10         In particular, Brown alleged that she "looked at and read the [Nutrition Facts Panel] on the
11   Products before purchasing them for the first time." FAC ¶ 57.  She further stated that she would
12   have seen the omitted information in the Nutrition Facts Panel had Van disclosed it because "she
13   regularly checks the [Nutrition Facts Panel] before purchasing any product" and "[s]he examines
14   the %DV column for protein when manufacturers provide that information." *Id.*  She explained
15   that when manufacturers provide the amount of digestibility-adjusted protein in the Nutrition Facts
16   Panel, "she will always choose the product that provides more of the recommended daily value of
17   protein (i.e., has a higher %DV for protein) because, as a vegan and a mom to a vegetarian child,
18   she needs to make sure that they all receive their daily recommended protein, which can be
19   difficult to do." *Id.*  She asserted that had Van's "adequately disclosed the corrected amount of
20   protein per serving," Brown "would not have purchased" the Waffles or "would have, at a
21   minimum, paid less for them." *Id.*  She also said that "[w]hen a manufacturer does not provide
22   [the digestibility-adjusted amount] for protein, she can only go off of the stated grams of protein,
23   and she assumes that all of those disclosed grams are in a form her body can use as protein." *Id.*

24         Brown also alleged reliance with regard to the Van's Power Grain Protein Original Waffles
25   in particular.  Brown explained that

> When she purchased the Vans Protein Original Waffles, relying on
> the representation of "10g PLANT-BASED protein" per serving,
> Plaintiff was looking for a product that would provide her 10 grams

9

> of useable protein per serving. Had she seen that the product provided only 10% (or less) of the daily value for protein—i.e., only approximately 5 grams or less corrected amount of protein per serving—she would not have purchased the product or, at a minimum would have paid less for it. Plaintiff would also have used the information as a basis to compare similar products and would have chosen instead to purchase one with a higher %DV. Without the statement of the corrected amount of protein per serving in the form of a %DV, the only information plaintiff had about the Products was the 10 gram protein quantity claim, and she believed she was receiving the full amount of that quantity in a form her body could use. Because the Products did not provide any statement of the corrected amount of protein per serving, she did not have any reason to believe that the Products provided less protein than the amount represented in the NFP and on the front of the label. Nor did she have any reason to know the Products consisted of anything other than high quality proteins, and did in fact believe she was receiving 10 grams of high quality protein.

*Id.* ¶ 58. Because Brown alleged that had the omitted information (the digestibility-adjusted protein total) been disclosed, she would have been aware of it and behaved differently, she has adequately pleaded actual reliance. *Daniel*, 806 F.3d at 1225.

Van's arguments to the contrary are formalistic and not persuasive. First, none of Van's cases support its untenable position that a plaintiff alleging reliance on an omission must necessarily invoke the term "reliance." MTD at 9. As Brown described in her response brief, the standard for pleading reliance on an omission can be established "various ways." *Madani*, 2019 WL 3753433, at *11 (quoting *Daniel*, 806 F.3d at 1226). Second, that Brown specifically alleged that she "read[] and rel[ied]" on the front label claim does not undermine her allegation that she "looked at and read the [Nutrition Facts Panel]." MTD at 9–10. As noted above, an omission may be established in various ways, and Brown points out the semantic illogic in requiring a plaintiff to recite that she has "relied on" information that has been omitted. Opp. at 11. Finally, Van's contention that the FAC "decouples" Brown's reliance on the front label and the Nutrition Facts Panel is belied by the FAC. *See* FAC ¶ 58 (alleging that "[w]hen she purchased the Vans Protein Original Waffles, relying on the representation of '10g PLANT-BASED protein' per serving, Plaintiff was looking for a product that would provide her 10 grams of usable protein per serving"

10

1  and "[h]ad she seen the product provided only . . . 5 grams or less corrected amount of protein per
2  serving—she would not have purchased the product or, at a minimum, would have paid less for it"
3  ); *see also id.* ¶¶ 56 (alleging that Brown "made each of her purchases after reading and relying on
4  the truthfulness of Defendant's front labels"); 57 (alleging that Brown "regularly checks the NFP
5  before purchasing any product" and "[s]he looked at and read the NFP on the Products before
6  purchasing them for the first time").

7      I conclude that Brown has addressed the deficiency that I noted in my previous Order.
8  Taken together and drawing all inferences in favor of Brown, the FAC plausibly alleges that she
9  would have relied on the digestibility-adjusted protein statement in the Nutrition Facts Panel and
10 behaved differently had it not been omitted. As a result, I deny Van's motion to dismiss on this
11 ground.

12 **II. BROWN'S RELIANCE IS NOT UNREASONABLE.**

13     Next, Van's argues that Brown's claimed reliance on the Waffles' labels is unreasonable in
14 light of her allegations elsewhere in the FAC regarding her knowledge of plant-based protein
15 sources. MTD at 12–13. I disagree.

16     Reasonableness of reliance is ordinarily a question of fact. *Guido v. Koopman*, 1 Cal. App.
17 4th 837, 843 (1991). Whether reliance was justified in a particular circumstance "'may be decided
18 as a matter of law if reasonable minds can come to only one conclusion based on the facts.'"
19 *Singh v. Google LLC*, No. 16-cv-03734-BLF, 2018 WL 984854, at *6 (N.D. Cal. Feb. 20, 2018)
20 (quoting *Guido*, 1 Cal. App. 4th at 843).

21     Van's contends that Brown's actual reliance[3] must be reasonable, and cites authority
22 purporting to demonstrate the same. *See* MTD at 12 (citing *Bush v. Mondelez*, 2016 WL 5886886,
23 at *4 (N.D. Cal. Oct. 7, 2016) ("Even claims based on unlawful misrepresentations require a
24 showing of *reasonable reliance* under the UCL.") (emphasis added); *Williamson v. Reinalt-*

---

[3] In her opposition, Brown cites authorities showing that the "reasonable consumer" test does not apply to claims under the unlawful prong of the UCL predicated on Sherman Law violations. Opp. at 15. While a correct statement of the law, Brown misses the point. Van's is not arguing that the reasonable consumer test applies to Brown's UCL claims. Instead, Van's contends that Brown's *actual reliance* is not reasonable. *See* MTD at 12–13; Reply at 8 (explaining that Brown "conflates" the reasonable consumer test with reasonable reliance for an UCL unlawful claim).

11

*Thomas Corp.*, 2012 WL 1438812, at *8 (N.D. Cal. Apr. 25, 2012) ("To establish standing as a class representative for a misrepresentation claim under the FAL or CLRA, a plaintiff must show he personally lost money or property because of his own *actual and reasonable reliance* on the allegedly untrue or misleading statements.") (emphasis added)). Neither *Bush* nor *Williamson* substantively consider whether a plaintiff's *actual* reliance must itself be reasonable, though, and *Nacarino v. Chobani* arguably held otherwise by finding that that plaintiff had established her actual reliance on the product's packaging even though the court had previously found that no reasonable consumer would have been deceived by the product's packaging. *Nacarino*, 2022 WL 344966, at *7.

Even assuming *arguendo* that Brown's actual reliance must be reasonable, though, Van's argument falls flat. Its theory draws upon the following allegations in the FAC:

1. Brown's allegation that "protein is very important to her and her family" because she "is a vegan and her youngest child is a vegetarian," *see* FAC ¶ 57.
2. Brown's allegation that her vegan diet makes it "difficult" to receive a full amount of "daily recommended protein," *see id.*
3. Brown's allegation that she read the front label protein claim that the protein in Van's Waffles is "PLANT-BASED," *see id.* ¶¶ 56, 58.

MTD at 12–13. Based on these three allegations, Van's contends that "[t]he most logical inference to be drawn from Plaintiff's allegations is that she knows that plant-based protein may not contribute equally to 'recommended daily value' of protein as compared to other sources," thus "discredit[ing] her theory of deception." *Id.* at 13.

Brown counters that this argument "assumes that because someone is vegan, they necessarily know about the complexities of protein digestibility, essential amino acid profiles, and that because of those things, not all proteins can be fully utilized in the human body. The FAC does not allege anything close to that, and the Court cannot draw such an inference *against* the plaintiff on a motion to dismiss." Opp. at 16 (emphasis in original). She also points out that "nothing in the FAC states or suggests that *all* plant-based proteins are not fully digestible and that

12

1   she would therefore automatically know that Defendant's 'PLANT-BASED' protein was not high
2   quality." *Id.* (emphasis in original).
3       Brown is correct that the FAC does not allege that all plant-based proteins are not fully
4   digestible. The FAC indicates that, while rare, some plant-based protein may contain all nine
5   essential amino acids. *See* FAC ¶ 30 ("Plant protein contains higher levels of antioxidants, but
6   *rarely* contains all nine essential amino acids.") (emphasis added). And more to the point, I am
7   not convinced that the aforementioned allegations in the FAC render Brown's reliance on the
8   front-label claim unreasonable as a matter of law. Van's simply stretches too far.
9       I conclude that Brown's reliance on the Waffles' labels is not unreasonable as a matter of
10  law, even considering the other allegations in the FAC regarding the importance of protein to her
11  and her family and Brown's difficulty in ensuring that she and her vegetarian child consume
12  enough protein on a daily basis. I therefore deny Van's motion to dismiss on this ground.

### III. THE COMMON LAW FRAUD AND UNJUST ENRICHMENT CLAIMS ARE WELL-PLEADED.

Van's argues that Brown's common law fraud and unjust enrichment claims must fail because of the aforementioned lack of reliance. MTD at 14. Its argument flows from the premise that Brown has failed to plead reliance for her UCL, CLRA, and FAL claims. *See id.* ("The failure of reliance for Plaintiff's UCL, CLRA, and FAL claims . . . necessarily means her fraud and unjust enrichment claims must be dismissed as well."); *see also* Reply at 9 ("Because her fraud and unjust enrichment claims require the same reasonable reliance allegations as her statutory claims, which fail, her common law claims must too be dismissed."). Because I have found that Brown adequately pleaded reliance for her UCL, CLRA, and FAL claims, I deny Van's motion to dismiss on this ground.

### IV. BROWN HAS SATISFIED RULE 9(B).

Finally, Van's charges that the FAC must be dismissed because it fails to satisfy the heightened pleading standards of Rule 9(b). MTD at 14. Again, I disagree.

Rule 9(b) requires a complaint must allege the "who, what, when, where, and how" of the misrepresentations. *Vess*, 317 F.3d at 1106. I previously found that the complaint satisfied most

13

of these elements, but "stumble[d] on the how" because Brown had not "pleaded facts showing that she looked at the Nutrition Facts panel." May 10, 2022 Order at 21. I instructed Brown to "plead facts showing that she saw and relied upon the alleged misrepresentations in deciding to purchase the Products." *Id.* at 22. Brown has addressed these deficiencies. In particular, Brown has pleaded facts showing that she saw and relied upon the Waffles' labels—both the "10g PLANT-BASED protein" on the front of the packaging, and the omitted digestibility-adjusted protein amount in the Nutrition Facts Panel—in deciding to purchase the Waffles. FAC ¶¶ 56–58. Van's arguments to the contrary are unfounded.

Van's also argues that "[t]he FAC's vague attempt to plead reliance fails to satisfy the 'when' element of Rule 9(b) as well." MTD at 14. In the FAC, Brown alleges that she purchased the Waffles "at various times throughout the class period" "from approximately 2019 to February 2021," FAC ¶ 14, that she "looked at and read the [Nutrition Facts Panel] on the Products before purchasing them for the first time," *id.* ¶ 57, that the Waffles contained "the same or substantially similar product label" on the front packaging "during the entirety of the Class Period," *id.* ¶ 17, and that the Nutrition Facts Panel "appeared consistently throughout the Class Period" as displayed in the FAC. *Id.* ¶ 18.

Van's contends that these allegations are inadequate because "[i]dentifying an 'approximate' purchase time that could span an number of years is insufficient under Rule 9(b)." MTD at 15. But its cited authorities merely stand for the unremarkable proposition that allegations that a plaintiff purchased products "over the past several years" was insufficient under Rule 9(b). *See Jones v. Nutiva, Inc.*, No. 16-cv-00711-HSG, 2017 WL 3617104, at *3 (N.D. Cal. Aug. 23, 2017) ("The Court similarly finds that Plaintiff Delalat has not sufficiently alleged when she was exposed to Defendant's alleged misrepresentations. Instead, she merely states that she purchased Defendant's products 'over the past several years.'"); *Robinson v. Unilever United States, Inc.*, No. 17-cv-3010, 2018 WL 6136139, at *6 (C.D. Cal. June 25, 2018) (finding that complaint failed to satisfy Rule 9(b) where plaintiff alleged that "[i]n the last several years," plaintiff "made several purchases of St. Ives Body Lotion and St. Ives Body Wash from various stores in and near Los Angeles and San Diego, California").

Courts in this district ruling on similar food-mislabeling claims have found that the "when" of Rule 9(b) "is satisfied when a plaintiff pleads that he has purchased the product at issue during a specified class period or that a label violation occurred during the class period, as long as there is no suggestion that a label changed or varied during that time." *Werdebaugh v. Blue Diamond Growers*, No. 12-cv-02724-LHK, 2013 WL 5487236, at *14 (N.D. Cal. Oct. 2, 2013); *see also Bruton v. Gerber Prod. Co.*, No. 12-cv-02412-LHK, 2014 WL 172111, at *13 (N.D. Cal. Jan. 15, 2014) (finding that allegation that "Bruton bought the Purchased Products throughout the class period, which runs from May 11, 2008 to the present" satisfies Rule 9(b)); *Clancy v. The Bromley Tea Co.*, 308 F.R.D. 564, 576 (N.D. Cal. 2013) (holding that complaint satisfied Rule 9(b) where "the 'when' is since 2008 and throughout the class period"). As noted above, Brown alleged that she purchased the Waffles from approximately 2019 to February 2021 and that the relevant labels remained "the same or substantially similar" throughout the Class Period. FAC ¶¶ 14, 17–18, 55. These allegations thus satisfy Brown's pleading obligations as to the "when" under Rule 9(b).

## CONCLUSION

For the foregoing reasons, I **DENY** Van's motion to dismiss.

A Case Management Conference is set for **September 27, 2022,** at 2 p.m. The parties shall file their Joint Case Management Statement, which should include a proposed case schedule at least through class certification, by **September 20, 2022**.

**IT IS SO ORDERED.**

Dated: August 22, 2022

William H. Orrick
United States District Judge